## Louisville & Nashville Railroad Company v. Commonwealth of Kentucky, By, et al.

(Decided December 20, 1912.)

### Appeal from Shelby Circuit Court.

1. **Escheat—Railroad Corporation—Section 192, Constitution.—** Where the evidence shows a past and present proper and legitimate use of real estate for railroad purposes, or a reasonable necessity for its future use, it is error to escheat land of a railroad on the ground that it is held contrary to section 192 of the Constitution. In the absence of evidence showing a present legitimate use of such property or a reasonable necessity for its future use, a judgment of escheat should go.

2. **Escheat—Railroad Corporation—Section 192, Constitution.—**Where a reasonable necessity for the future use of property is shown, the fact that the property in the meantime is rented to the owner of a lumber or coal yard, not only for the convenience of such owner, but to enable the company to handle the traffic more conveniently and at less expense, will not of itself authorize a judgment of escheat.

3. **Escheat—Railroad Company—Property Company—Ownership of Stock by Railroad—Action of Escheat—Subsequent Distribution of Stock Among Stockholders of Railroad Company—Effect on Action.—**Where a railroad company organizes a property company to which it conveys certain real estate, and owns and holds practically all the stock of such company, it will be regarded as the real owner of the property thus conveyed to and held by the property company, and the subsequent distribution of the stock of the property company among the stockholders of the railroad

company will not defeat an action of escheat brought prior to the time of such distribution.

4. Escheat—Railroad Corporation—Section 192, Constitution—Pleading.—In an action for escheat, it is not necessary in the petition to negative the idea of the reasonable necessity for the future use of the property by the corporation. It is sufficient to describe the property and to allege that it had been held for a longer period than five years and was not proper or necessary for carrying on the legitimate business of the corporation.

LUTHER C. WILLIS and BENJAMIN D. WARFIELD for appellant.

GEO. L. PICKETT, PICKETT & BARRICKMAN and BEARD & MARSHALL for appellees.

Opinion of the Court by William Rogers Clay, Commissioner—Reversing.

This is an action by the Commonwealth against the Louisville & Nashville Railroad Company to escheat numerous parcels of land on the ground that they were held contrary to section 192 of the Constitution, providing that no corporation shall "hold any real estate except such as may be proper or necessary for carrying on its legitimate business for a longer period than five years, under penalty of escheat." Several of the tracts are town lots located in the city of Shelbyville. They are designated in the petition and discussed in the evidence as Lots Nos. 1, 2, 3, 4, 5, 6, 7, 8 and 9. By amended petition, it was sought to escheat certain narrow strips of land lying out in the country and adjoining the railroad right of way; also a lot in Bagdad, Kentucky. The original suit, which was filed in 1907, was against the railroad company. On February 17, 1909, an amended petition was filed making the Louisville Property Company a party defendant. In the amended petition it was charged that the Louisville Property Company was organized by the stockholders of the Louisville & Nashville Railroad Company, and was created organized, and existed for the sole and only purpose of a buying and holding company for the Louisville & Nashville Railroad Company; that the only purpose of its organization and existence was that the Louisville & Nashville Railroad Company might own and hold real estate contrary to the laws of the State of Kentucky, and not necessary for carrying on its legitimate business, and the said corporation, Louisville Property Com-

pany, was organized and existed for the purpose of enabling the Louisville & Nashville Railroad Company by that device to carry on its legitimate business contrary to the laws of the State of Kentucky. On final hearing, the court escheated all of Lot No. 1 except a strip 11½ feet wide adjoining its passenger station, and all of Lots Nos. 4 and 5, and refused to escheat all the other lots and tracts involved. From the judgment escheating Lots Nos. 1, 4 and 5, the railroad company appeals. From that part of the judgment dismissing the petition as to the other lots and tracts involved, the Commonwealth prosecutes a cross appeal.

In the recent case of German Insurance Company v. Commonwealth, 141 Ky., 606, where a question of escheat was involved, the court used the following language:

"We do not think that a corporation is in all cases to be deprived of its real property merely because it has owned it for more than five years, without applying it to some proper or necessary use in connection with its business. The purpose of its acquisition, the intention with which it is held, and the use to which it may be and is designed to be put, are to be considered in connection with the time of the holding in determining whether or not the provision of the Constitution has been violated   *   *   *   .

"A corporation organized for business purposes, and with the power to carry on business enterprises, should be allowed the same liberty within the scope of its charter rights and subject to the limitations imposed by law as would be permitted to an individual engaged in a similar business. It is not the purpose of the Constitution or the law to place in the way of the success of corporations unreasonable obstacles or to hinder them from acting as prudent business men would act under like or similar circumstances. Having this view of the privileges that corporations should enjoy, we do not think the Constitution should be so construed as to deny a corporation the opportunity to look forward to the time when its needs in the conduct of its business will be greater than at present or to deprive it of the right to prepare in advance for conditions that it may reasonably expect will come up in the future. If a corporation was not allowed to carry into execution plans that the good judgment of its officers believe to be essential to its growth and prosperity, it would discourage

people from investing their money in these agents that are so indispensable to the business of the State and country. From these considerations and others that might be mentioned, we conclude that the time limitation imposed by the Constitution was not intended to deny a corporation the right in good faith to acquire real estate for a proper and necessary future use in the transaction of its legitimate business, and hold the same for a longer period than five years, if it is so held with the intention in good faith of devoting it to a proper and necessary use, and it will be necessary for such purpose when so used. It is not so much the time for which real estate is held, but the purpose for which it was acquired, the intention with which it is held, and the use to which it is to be put and the necessity for this use, that determines the right of the corporation to hold it."

The rule above announced was subsequently adhered to and applied in the case of the Louisville Property Company v. Commonwealth, 146 Ky., 827.

With these principles in mind, let us consider the various lots and tracts of land involved. In the first place it is proper to say that Shelbyville is a prosperous and growing town, and an important railroad point. The traffic, both freight and passenger, to and from that point is large and is growing larger. The Louisville & Nashville Railroad Company has three railroads entering Shelbyville, to wit: The Shelby Branch, the Bloomfield Branch and the Shelby Cut-off. Having three sections of track at that point, it employs three foremen and three separate gangs of men. We shall consider the lots in their order.

Lot No. 1. This lot fronts on Main street, 98½ feet, and is 234 feet in depth. The last mentioned distance it lies on Eleventh street, and along the side of the Bloomfield Branch of the defendant's right of way. All of defendant's trains stop at Eleventh street, and at this point defendant maintains only a platform as a passenger station. In order to avoid driving upon the railroad track, 11½ feet of Lot No. 1 are necessarily used by the patrons of the railroad to reach the station. Defendant's superintendent and section foreman gave it as their opinion that the railroad ought to have a regular depot building at that point instead of a platform, and Lot No. 1 was the only available site for that purpose. If such a depot was erected, it would be necessary to use all or a larger part of Lot No. 1. There is

no evidence to the contrary. On these facts, we conclude that the defendant showed a reasonable necessity for a future use of the property, and that the court erred in escheating any portion of this lot.

Lots Nos. 2 and 3. Lot No. 2 fronts 50 feet on Main street, and extends back along Eleventh street for a distance of 178 feet. It adjoins the Bloomfield Branch of defendant's right of way. This lot is occupied by defendant's section foreman on the Bloomfield section. It was occupied by him before suit was brought, and has been continuously occupied by him since that time. Lot No. 3 lies near Lot No. 2, and a portion of it is used as a garden for the section foreman, and the other portion of it is used as a place for storing cross-ties and ballast. The evidence shows that it was customary for the railroad company to furnish its section foremen with houses and gardens wherever practicable to do so. Defendant's witnesses testified that both these lots were absolutely necessary to the conduct of defendant's business at that point. There is no evidence to the contrary. We think the evidence sufficiently shows a past, present and necessary legitimate use of these two lots. The trial court, therefore, did not err in refusing to escheat them.

Lots Nos. 4 and 5. Lot No. 4, consisting of a little over a quarter of an acre, adjoins the Shelby Branch of defendant's right of way. It lies only a few feet from defendant's freight depot. At present it is under lease to Hall & Sons, who use it in connection with land of their own in carrying on a lumber yard. Lot No. 5 also adjoins the Shelby Branch of defendant's right of way, and is leased to Hall & Sons for the purpose of carrying on a coal yard. The evidence shows that Hall & Sons are extensive shippers, and that the defendant leased Lots Nos. 4 and 5 to Hall & Sons until it should become necessary for the railroad to use them. It also appears that the lumber and coal were hauled in carload lots, and that the presence of the lumber and coal yards near defendant's tracks was not only a convenience to Hall & Sons, but enabled defendant to handle the traffic more conveniently and at less expense, thus contributing to the successful operation of the road. The evidence also shows that there are tracks running to Lots Nos. 4 and 5 rented by Hall & Sons. If the defendant did not have tracks to these lots from which to unload coal and lumber, it would have to provide

other facilities at Shelbyville for that purpose, and in order to do so would either have to use the identical lots leased to Hall & Sons, or purchase for such purpose other land less favorably situated, for which it would have probably to pay an exorbitant price. Defendant's superintendent testifies that in the event of the double tracking of the Shelby Cut-off, or the extension of the defendant's yards at Shelbyville, which the increased traffic and railroad development will require, both Lots 4 and 5 would become necessary for the tracks and yards of the railroad company. The evidence being sufficient to show a reasonable necessity for the future use of Lots 4 and 5, we do not think they should be escheated, merely because the railroad in the meantime is leasing them to its shippers, in order not only to encourage the business of its patrons, but to enable it to handle the business more conveniently and at less expense. We conclude that the court erred in escheating Lots 4 and 5.

Lot No. 6. On this lot there are six frame dwellings, occupied by section foremen and section men. Here we have a past, present, necessary and legitimate use of this lot, and the trial court properly adjudged that it was not subject to escheat.

Lot No. 7. This lot was originally acquired as a borrow pit to enable defendant to make a large embankment in constructing the Shelby Cut-off. After the top surface was removed, defendant planted that part of the lot not embraced in its right of way in locust trees. The trees numbered about 2,000. The evidence shows a necessity on the part of railroad companies to grow their own trees for cross-ties, because of the increasing scarcity of timber, and the great difficulty of supplying their wants in the market. The evidence also shows that the defendant would need in its own business all the cross-ties that it could get out of the locust trees thus planted. As a reasonable and proper use has been, and is now being made of this lot, and as the evidence shows there is a reasonable probability that it will again come into use as a borrow pit, we conclude that the court properly refused to escheat it.

Lots Nos. 8 and 9. The title to these lots appears to be in the Louisville Property Company, a corporation originally organized by the officers and stockholders of the Louisville & Nashville Railroad Company. The Louisville & Nashville Railroad Company conveyed to

it certain real estate owned by it in Kentucky, and certain real estate located elsewhere. In the conveyance a lien was reserved in favor of the railroad company to secure the purchase price. The indebtedness of the Louisville Property Company to the Louisville & Nashville Railroad Company on December 1, 1910, was $1,721,111.57. When the Louisville Property Company was first formed, and for some time thereafter, all its stock was held by the Louisville & Nashville Railroad Company and its officers. In the year 1908 the stock of the Louisville Property Company was distributed among the stockholders of the Louisville & Nashville Railroad Company, in accordance with their respective holdings of Louisville & Nashville Railroad Company stock. The trial court was of the opinion that the distribution of the Louisville Property Company's stock among the stockholders of the Louisville & Nashville Railroad Company was lawful and proper, and that neither before nor after that time was the Property Company a holding company for the use and benefit of the Louisville & Nashville Railroad Company. As to the effect of such distribution of the Louisville Property Company's stock on suits brought thereafter we express no opinion. It is sufficient in this case to say that suit was filed in the year 1907. At that time the Louisville & Nashville Railroad Company owned all the stock of the Louisville Property Company, and must be regarded for the purpose of this case as the real owner of the property conveyed by it to the Louisville Property Company. Being the real owner of the property in question at the time suit was brought, the subsequent distribution of the Louisville Property Company's stock among the stockholders of the Louisville & Nashville Railroad Company cannot defeat a recovery in this action if the lots in controversy were subject to escheat at the time the suit was brought. With this view of the case, it becomes necessary to consider Lots 8 and 9 from the same standpoint as the other lots and tracts in controversy.

It is shown that Lot. No. 8 extends both north and south of defendant's right of way, and perhaps one-fourth of it covers the right of way. One-fourth of the lot is taken up by the embankment of the railroad. A portion of this lot is used by the Standard Oil Company as its oil depot in Shelbyville, in connection with the oil hauled by that company to that place, and was and is

necessary for the defendant for that purpose. The evidence also shows that this lot adjoins defendant's right of way, and in the event of double tracking, will necessarily be used for that purpose. A portion of the lot is also planted in locust trees for the purpose of getting timber for cross-ties. We conclude that a legitimate past and present use of this lot is shown, and a reasonable necessity for its future use. For these reasons, this lot should not have been escheated.

No present or reasonably necessary future use of Lot No. 9 being shown, it follows that this lot should have been escheated.

### ADDITIONAL TRACTS.

As to the narrow strips of land adjoining defendant's right of way, and described in the amended petition, the evidence shows that they are planted in locust trees for the purpose of raising timber for ties. As passing or side tracks are required, they will be necessary for that purpose. The evidence shows that the lot in Bagdad is occupied by a section foreman. It was proper to refuse to escheat those lots.

The petition is not defective because it fails to negative the idea of a reasonable necessity for the future use of the property for railroad purposes. In such an action, all that is necessary is to describe the property and to allege that it had been held for a longer period than five years, and was not proper or necessary for carrying on the legitimate business of the corporation. The reasonable necessity for its future use is a matter of defense.

Judgment reversed, both on original and cross-appeals, and cause remanded with directions to enter judgment escheating Lot No. 9.