## Commonwealth v. Roberta Coal Company.

(Decided November 28, 1919.)

### Appeal from Letcher Circuit Court.

1. Attorney General—Duty to Attend to Litigation for the State and Its Departments.—Under section 112 of the Kentucky Statutes it is the duty of the Attorney General and his assistants to attend to all litigation and business in which the Commonwealth or any state officer in connection with his official duties may be interested.

2. Attorney General—Specal Counsel—Employment of.—No state officer, state board, commission nor head of any department or institution of the state, nor any person connected therewith, has any authority to employ or be represented by other counsel at the expense of the state or at the expense of any fund set apart for its use, unless the Attorney General requests such employment.

3. Attorney General—Employment of Special Counsel—Purposes for Which May Be Employed.—Special counsel may be employed in any action, proceeding, prosecution or matter affecting the interest of the Commonwealth and concerning which it is the duty of the Attorney General to represent the state. They may also be employed to investigate whether suit should be brought and determine whether defense should be made.

4. Attorney General—Other Attorneys Without Expense to the State May Be Associated With.—The Attorney General may have the assistance of other counsel in cases brought by him when such other counsel with his consent volunteer their services without any expense to the State.

5. Attorney General—Special Counsel—Employment of—Emergency That Authorizes.—Whether an emergency exists that will warrant the employment of special counsel is a question that must be determined by the Attorney General, and his discretion in exercising it within the limitation of the statute will not be interfered with by the court.

6. Attorney General—Special Counsel—Employment of—When Court May Question Validity of Appointment.—The court may inquire into the validity of any appointment made on the request of the Attorney General and if the authority conferred by the statute was exceeded the employment may be declared void.

7. Attorney General—Special Counsel—Employment of—What Request for Must Set Forth.—Whenever special counsel are to be employed the request for the employment as well as the contract of employment must specify the nature of the suit, proceeding, prosecution or matter the special counsel are to be engaged to assist in and the name of the person or corporation whose interest will be affected by the employment.

8. Attorney General—Emergency for Appointment of Special Counsel—Governor May Refuse to Appoint.—Although the Attorney General may request the Governor to appoint special counsel the Governor may refuse to do so.

9. Attorney General—Special Counsel—Appointment of.—The Governor, on request of the Attorney General, may appoint special counsel in any case or matter in which the state is interested.

10. Escheat—State Must Bring Suit To.—Suits to escheat property can only be brought by and in the name of the Commonwealth.

11. Attorney and Client—How Authority of Attorney Who Brings Suit May Be Questioned—Practice.—The defendant in any suit has the right to question by motion supported by affidavit the authority of the counsel representing the plaintiff to institute or prosecute

the action, and when such affidavit is filed the court may issue a rule, and if it appears that the attorney had no authority to bring the suit the court may dismiss it without prejudice.

M. M. LOGAN, CHARLES H. MORRIS, Attorney General, CLAY-TON B. BLAKEY and T. B. BLAKEY for appellant.

HAGER & STEWART, MORGAN & HARVIE and W. O. DAVIS for appellee.

HUMPHREY, CRAWFORD, MIDDLETON & HUMPHREY, and

CHARLES W. MILNER, Amicus Curiae.

OPINION OF THE COURT BY CHIEF JUSTICE CARROLL.—
Affirming.

This appeal is prosecuted by the Commonwealth from a judgment of the Letcher circuit court dismissing a petition filed by it against the Roberta Coal Company to escheat real estate owned by the company, upon the ground that the attorneys who brought the suit had no authority to institute or prosecute the action.

The facts appearing in the record are these:  On July 19, 1919, a petition in equity styled ''Commonwealth of Kentucky on relation of Charles H. Morris, Attorney General, and Theodore B. Blakey, and Clayton B. Blakey, special counsel,'' was filed against the Roberta Coal Company.  The petition set out that the plaintiff was the Commonwealth of Kentucky on the relation of Charles H. Morris, Attorney General, and Theodore B. Blakey, and Clayton B. Blakey, special counsel, and that the defendant, the Roberta Coal Company, a foreign corporation had acquired the fee simple title in June, 1914, from different vendors to two separately described tracts of land in Letcher county; and on July 2, 1914, the coal, oil, gas, salt water, mineral, stone, timber and mineral rights and interests in four separately described tracts of land in Letcher county from the Hamilton Realty Company; that in February, 1913, it had acquired from T. P. Craft the coal, oil, gas, salt water, minerals, stone and timber, mineral rights and interests in a described tract of land in Letcher county; that in March, 1911, it had acquired from S. S. Willis, the coal, oil, gas, salt water, stone, mineral, timber, mineral rights and interests in six separately described tracts of land; that in December, 1912, it acquired from Lee Craft, the coal, oil,

gas, salt water, mineral, stone, timber, mineral rights and interests in a described tract of land.

It was further averred that the Roberta Coal Company had been the owner and in possession of the described tracts of land since the respective dates of the deeds which each made to it and for a period of more than five years before the institution of the action; that "none of said tracts of land are now used by defendant, or have been used by the defendant during any portion of the five-year period preceding the filing of this suit in connection with or for the purpose of carrying on the legitimate business which the defendant is, or was, authorized to carry on"; that "none of said tracts of land are now, or have been during any of the five-year periods preceding the filing of this suit, proper or necessary for carrying on the legitimate business of the defendant corporation"; that "each and all of said tracts of land are subject to escheat under the constitution and laws of the state of Kentucky, and have under the constitution and laws of the state of Kentucky, escheated and reverted to the state of Kentucky, and that the plaintiff is now entitled to have it so adjudged and is further entitled to the possession of said lands"; that "notwithstanding the foregoing facts the defendant is now claiming title to said lands and is exercising the rights of ownership therein to the detriment of the Commonwealth of Kentucky, and is committing waste thereon."

The prayer of the petition was that "a judgment be entered herein adjudging and decreeing that each of the tracts of land herein described have escheated and reverted to the Commonwealth of Kentucky, and for a further order adjudging and decreeing that the Commonwealth of Kentucky is entitled to the possession of same, and further adjudging that the defendant herein has no interest, right or title in any of said tracts of land."

The petition was signed by "Charles H. Morris, Attorney General; Theodore B. Blakey and Clayton B. Blakey, special counsel for the Commonwealth," and verified by Clayton B. Blakey.

When the case came up for hearing in the Letcher circuit court the Roberta Coal Company by its counsel, Morgan and Harvie, moved the court in writing "to require Theodore B. Blakey and Clayton B. Blakey, special counsel for the plaintiff, the Commonwealth of Kentucky

in the above styled case, to produce and file as part of the record in this case, their authority or any authority either one of them may have for bringing or filing of and the prosecution in the way and manner it is signed and verified, under the penalty of having the petition dismissed unless said authority is filed." And in support of this motion filed the following affidavit made by its counsel, Harvie:

"The affiant, Lewis E. Harvie, having been duly sworn states as follows:

"That this suit purports, in the petition, to have been brought on behalf of the Commonwealth of Kentucky by Charles H. Morris, Attorney General, and Theodore B. Blakey and Clayton B. Blakey, special counsel, as relators.

"That, as affiant is informed and believes and now charges this suit has in fact been instituted by Theodore B. Blakey and Clayton B. Blakey, alone, and without the knowledge, authority or direction of Charles H. Morris, Attorney General; and that the use of the name of said Charles H. Morris, Attorney General, as one of the relators in the petition, and also as one of the attorneys for the Commonwealth therein, was wholly unauthorized by said Morris and such use was made without his knowledge or consent.

"That Theodore B. Blakey and Clayton B. Blakey described as special counsel and relators in the petition and who appear as attorneys for the Commonwealth in the signature to the petition and in the verification thereof were without legal authority to institute or prosecute this action, either as relators or special counsel, or in any other capacity; that, as affiant is advised, said Blakeys have never been lawfully retained or lawfully employed to bring this suit and are utterly without any legal authority to maintain the same, and their action in filing this suit and in assuming to proceed therein in the name of the Commonwealth of Kentucky against this defendant is wholly illegal and without any warrant of law whatsoever.

"That the attorneys named in the petition who are attempting to prosecute this suit are without any sufficient warrant of attorney so to do and the use by them of the name of the Commonwealth of Kentucky as plaintiff is unauthorized.

"That this affidavit is filed in support of a motion for a rule heretofore filed herein, praying that Theodore B. Blakey and Clayton B. Blakey produce and file their authority or any authority they may have for the prosecution of this suit."

Upon the filing of the motion and affidavit the court "ordered and adjudged that a rule be granted against the said Theodore B. Blakey and Clayton B. Blakey returnable Friday, August 29, 1919, at 10 o'clock, a. m., requiring said attorneys and each of them to file their contract of employment and warrant of attorney for instituting and prosecuting this action . . . . . under the penalty of having this rule made absolute and the petition dismissed for failure to produce said authority."

On a subsequent day of the term, Theodore B. Blakey, for response to the rule, acting for himself alone, and under protest, filed the following certified copies from the office of the secretary of state, showing his contract of employment and authority to represent the Commonwealth:

"Frankfort, Ky., April 11, 1919.

"Hon. A. O. Stanley, Governor of Kentucky, Frankfort, Ky.

"My Dear Governor Stanley:

"I am advised that there are large tracts of land in this state which have escheated to the Commonwealth or are subject to be escheated it.

"An extended investigation and the expenditure of a considerable sum of money would be required if this department should undertake to investigate whether this information that has come to me is correct, and this office is not prepared to undertake the investigation of these matters with its present force, or the prosecution of such suits as may be necessary to recover the property subject to escheat.

"It has been the practice of the Attorney General's Department for a good many years, where attorneys of the Commonwealth in good faith believed there is property subject to escheat to the Commonwealth, and who call the same to the attention of this department, that they have been employed on a contingent basis to make the investigation and to file suit to recover such property.

"In the present instance, the tracts believed to be subject to escheat have been called to my attention by Messrs. Theodore B. Blakey and Clayton B. Blakey, attorneys-at-law.

"In as much as this department, on account of the pressure of other business cannot investigate whether these properties are subject to escheat, I am of the opinion that such an emergency exists as is contemplated by the statute which authorizes and requires the employment of other counsel on a contingent basis, in order to properly protect the interest of the Commonwealth, and to recover for it any property that has been escheated to it.

"I therefore request that you employ counsel for the purpose indicated above, and that their employment be limited to suits brought during the present year, 1919, which they shall be expected to prosecute to a final determination.

"Very truly yours,
"CHARLES H. MORRIS, Attorney General."

The contract of employment is as follows:

"Frankfort, Ky., April 12, 1919.

"This agreement, made this day and date above written by and between A. O. Stanley, Governor of the Commonwealth of Kentucky, party of the first part, and Theodore B. Blakey and Clayton B. Blakey, parties of the second part,

"Witnesseth: That whereas the Attorney General has this day, because of an emergency existing, requested the employment of counsel for the prosecution of certain suits for the recovery of lands which have been escheated to the Commonwealth, or are subject to escheat to the Commonwealth, a copy of which request is attached hereto and made a part hereof.

"Now, therefore, the premises considered, the first party does hereby employ the second parties, pursuant to section 112, subsection 5, of the Kentucky Statutes, to institute and prosecute to completion such suits or proceedings in the name of the Commonwealth as may be necessary to recover for the Commonwealth of Kentucky any property which, under section 192 of the Constitution of Kentucky, and section 567 of the Kentucky Statutes, has escheated to the Commonwealth of Ken-

tucky, or which is now subject to be escheated to it, or which may be subject to escheat during the current year, 1919. This contract shall apply only to such suits as may be brought by the second parties during the year 1919.

"The second parties agree to investigate, prosecute and attend to all such claims in a careful, diligent and skillful manner; and as full compensation for all services rendered by them to the Commonwealth, under this employment, they shall receive and be paid by the Commonwealth of Kentucky a sum equal to thirty per cent of whatever may be recovered and paid into the state treasury under any suit or proceedings had under this employment.

"The second parties shall receive nothing for any investigation they may make or prosecution of any suit or proceeding unless recovery is had.

"In testimony whereof, witness the signatures of the parties hereto this day and date above written.

"A. O. Stanley, Governor of the Commonwealth of Kentucky.

"Theodore B. Blakey, Clayton B. Blakey.

"I, Charles H. Morris, Attorney General of the Commonwealth of Kentucky, approve the above contract, as set out upon its terms and conditions.

"This April 12, 1919.

"Charles H. Morris, Attorney General."

It also appears in the record that counsel for the Commonwealth who was present, "being unable to file counter affidavits, at the hearing of the motion for a rule to show cause why the case should not be dismissed, moved the court for time in which to communicate with absent counsel for plaintiff and to prepare and file counter affidavits before the motion for a rule was passed on by the court," but the court overruled this motion and refused further time to prepare and file counter affidavits.

Thereafter the Roberta Coal Company by its counsel filed a general demurrer to the response of Blakey and the court adjudging the response insufficient made the rule absolute and dismissed the petition, to which ruling "Theodore B. Blakey and Clayton B. Blakey objected and excepted and prayed an appeal to the Court of Ap-

peals which was granted.'' It is, however, agreed that
the granting of the appeal in this manner should have
the same effect as if the Commonwealth had prayed and
been granted an appeal. Following this, this record
was filed in the clerk's office of this court by the appellee,
Roberta Coal Company.

On this record the opinion will be confined to a con-
sideration of the correctness of the ruling of the lower
court in dismissing the petition upon the ground that the
suit was filed by special counsel who had no authority
to institute or prosecute it. We will not in any manner
determine the rights of the case, or express any opinion
as to when or under what circumstances property owned
by this or other corporations may be escheated in a suit
by the Commonwealth.

Thus limiting the question before us, the applicable
law may be found in section 112-15 of the Kentucky
Statutes; in which it is provided in subsection 1 that
''The Attorney General shall be the chief law officer of
the Commonwealth, and all its departments. The At-
torney General shall appear for the Commonwealth in
the trial and argument of all cases, civil and criminal, in
the Kentucky Court of Appeals whenever the Common-
wealth is directly or indirectly interested; he shall also
appear in behalf of the Commonwealth in any court or
tribunal in or out of this state in any case or proceed-
ing in which the Commonwealth is a party in interest,
except where it is made the duty of the Commonwealth's
attorney or county attorney to represent the Common-
wealth. He shall institute all actions and proceedings
necessary to cause the payment of all judgments and
demands of the Commonwealth, payable at the state
treasury, not discharged in the proper time. He shall,
with the assistance of the Auditor of Public Accounts,
investigate the condition of all unsatisfied claims, de-
mands, accounts, and judgments in favor of the Com-
monwealth, and shall take all necessary steps, by motion,
action or otherwise, to collect or cause to be collected such
claims, demands, accounts and judgments, and paid into
state treasury.''

It is further provided in subsection 5 that ''The At-
torney General and his assistants shall attend to all liti-
gation and business in or out of the state, required of
him or them under this act, or other existing law or laws

hereinafter enacted, and also any litigation or business that any state officer may have in connection with or growing out of his official duty; and no state officer, board of trustees or the head of any department or institution of the state shall have authority to employ or to be represented by any other counsel or attorney-at-law, unless an emergency arises, which, in the opinion of the Attorney General, requires the employment of other counsel, in order to properly protect the interest of the Commonwealth, in which event the Attorney General shall, in writing, setting forth the reasons for such employment, request the Governor to employ such additional counsel. Before such employment, said written request shall be filed in the office of the secretary of state, and shall be a public record, and a copy thereof shall be retained and kept on file in the office of the Attorney General.

"Before such counsel is employed, his fee and compensation shall be agreed upon and fixed by written contract by the Governor and said counsel, subject to the approval of the Attorney General, and copies thereof shall be kept on file in the office of the Attorney General and the secretary of state."

Under this statute it is made the duty of the Attorney General and his assistants to attend to all litigation and business in which the Commonwealth, or any state officer in connection with his official duties may be interested; and no state officer, or state board, commission, or head of any department or institution of the state, or any person connected therewith has any authority to employ or to be represented by other counsel at the expense of the state, or at the expense of any fund set apart for his or its use unless the Attorney General requests the employment of such other counsel.

The purpose of the statute was, as said in Com. v. Louisville Property Co., 141 Ky. 731, "to do away with the practice hitherto obtaining of employing special counsel or attorneys to represent the Commonwealth"; and to put in the hands of the Attorney General and his assistants all litigation and other business that might or did require the employment of attorneys, thus taking away from every other state officer or state board, commission, department, institution, or any person connected therewith, the authority to employ at the expense of the state or at the expense of any fund set apart for his or

its use, special attorneys, unless their employment is first requested by the Attorney General and authorized by the Governor.

The employment, however, of special counsel is not limited to matters or litigation affecting some state department, board or commission. The statute is broad enough to permit the employment of special counsel in escheat cases, or in any action, proceeding, prosecution or matter affecting the interest of the Commonwealth and concerning which it is the duty of the Attorney General to represent the state. They may also be employed to investigate and determine whether suit should be brought by the Commonwealth in a particular case, as well as to investigate and determine whether a defense in a designated case should be made by the Commonwealth, and in any matter affecting the interest of the Commonwealth or any state officer, state board, commission, department or institution.

Accordingly as suits to escheat property can only be brought by and in the name of the Commonwealth—Chesapeake & Ohio Ry. Co. v. Roskamp, 179 Ky. 175—at the instance of the Attorney General of the state and in his name as counsel for the state, it follows that if this suit was not brought by the Attorney General or by special counsel duly authorized to do so the action was properly dismissed by the lower court.

We say this because the defendant in any suit has the right to question by motion, supported by affidavit, the authority of the counsel representing the plaintiff to institute or prosecute the action, and when such an affidavit is filed the court may in the exercise of a sound discretion issue a rule against the attorneys of record representing the plaintiff to show by what authority, if any, they brought the suit; and if in response to the rule they fail to show sufficient authority for instituting the action the court may dismiss it without prejudice. McAlexander v. Wright, 3 A. K. M. 189; Belt v. Wilson, 6 J. J. M. 495; Com. v. Louisville Property Co., 128 Ky. 790; 4 Cyc. 928.

This was the practice pursued in the lower court in this case, and we will now inquire into the question whether this suit was brought by attorneys authorized to institute and prosecute it.

At the very outset we are met with the argument on behalf of the Commonwealth that the petition on its face

shows that the suit was brought by the Commonwealth on the relation of the Attorney General of the state and other special counsel, and further shows that it was signed by the Attorney General as well as the special counsel. Therefore, it is said, that although it should be conceded that the special counsel had no authority to institute or prosecute the action, this would not authorize the dismissal, because if the names of the special counsel were stricken from the petition it would yet appear that the suit was brought by the Attorney General of the state.

Of course if it should be admitted that the suit was brought by the Attorney General of the state the action of the lower court in dismissing it would plainly be error as the Attorney General had, as we have said, the undoubted right to bring the suit.

We are further of the opinion that if the suit was in fact brought by the Attorney General, the mere circumstance that other attorneys not connected with his office joined with him as counsel for the plaintiff, did not authorize the dismissal of the suit upon the ground that it was dismissed by the lower court.

If the Attorney General does in fact bring such a suit as this, it will be a suit in the name of the Commonwealth brought by the Attorney General although other counsel not employed in the manner authorized by the statute may be associated with him in the prosecution of the suit. The statute does not prevent the Attorney General from having the assistance of other counsel in cases brought by him when such other counsel with his consent volunteer their services without any expense to the state. So that again the question recurs was this suit in fact brought by the Attorney General or by the special counsel whose names are signed to the petition?

Passing for the present the validity of the employment of these special counsel by the Governor and their right to bring such a suit as this under the employment, we find in the record the uncontroverted affidavit of Lewis E. Harvie, counsel for the Roberta Coal Company heretofore set out averring that as he "is informed and believes and now charges this suit has in fact been instituted by Theodore B. Blakey and Clayton B. Blakey, alone, and without the knowledge or authority or direction of Charles H. Morris, Attorney General; and that

the use of the name of said Charles H. Morris, Attorney General, as one of the relators in the petition, and also as one of the attorneys for the Commonwealth therein was wholly unauthorized by said Morris and such use was made without his knowledge or consent.''

When this affidavit was filed the court should have permitted special counsel for the Commonwealth to file the counter affidavit he desired to file controverting the averments of the affidavit made by Harvie, but as the court for reasons that do not appear in the record refused to give time to prepare and file such a counter affidavit, we think that on the uncontroverted affidavit of Harvie the action was properly dismissed.

But the error committed by the court in refusing to give time to controvert the affidavit of Harvie is not so material in view of the larger and controlling question presented by the record, which put in issue the validity of the employment by the Governor of the Blakeys as special counsel.

We say this because it seems very plain from the facts appearing in the record that these counsel were not volunteers, but were under the employment of the Governor. It is also manifest that the suit was in fact brought by them and not by the Attorney General. It is true the name of the Attorney General appears as relator in the petition and is signed to the petition as one of the attorneys for the plaintiff; but we think there can be no doubt that the name of the Attorney General was put in as relator and signed to the petition by the special counsel, who believed they had the right to do this under their employment.

It is hardly necessary to here add that in making these observations we have no intention of reflecting on the special counsel, who are gentlemen of high character; they assumed, that their employment was valid and therefore they might with entire propriety join with them the Attorney General. For, of course, if the employment was valid, as they believed, they had the right to use his name in any legitimate way in connection with the litigation they were engaged to carry on.

Looking now again to the manner in which the special counsel were employed we find from the letter of the Attorney General to the Governor that he was informed by Theodore B. Blakey and Clayton B. Blakey that ''there

are large tracts of land in this state which have escheated to the Commonwealth or are subject to be escheated to it"; and that "an extended investigation and the expenditure of a considerable sum of money would be required if this department should undertake to investigate whether this information that has come to me is correct, and this office is not prepared to undertake the investigation of these matters with its present force or the prosecution of such suits as may be necessary to recover the property subject to escheat." He further said that "inasmuch as this department on account of the pressure of other business cannot investigate whether these properties are subject to escheat I am of the opinion that such an emergency exists as is contemplated by the statute which authorizes and requests the employment of other counsel on a contingent basis. I therefore request that you employ counsel for the purpose above indicated."

Following this request and on the next day the Governor employed the Blakeys to "institute and prosecute to completion such suits or proceedings in the name of the Commonwealth as may be necessary to recover for the Commonwealth of Kentucky any property which under section 192 of the Constitution of Kentucky and section 567 of the Kentucky Statutes has escheated to the Commonwealth of Kentucky or which is now subject to be escheated to it or which may be subject to escheat during the current year, 1919."

The validity of the employment of these special counsel is challenged upon two principal grounds: First, that the employment of special counsel under the statutes is not authorized "unless an emergency arises which in the opinion of the Attorney General requires the employment of other counsel"; and the argument is made that there was no such "emergency" as is contemplated by the statute; second, that when such an emergency exists as authorizes the employment of special counsel the employment must be confined to a particularly described suit against a named person or corporation; and that as the employment here did not name the corporation against whom the suit or any suit was to be brought it was a void employment.

Whether an emergency exists that will warrant the employment of special counsel is a question that must be determined by the Attorney General; and when his re-

quest for special counsel falls within the reasonable bounds of the statute the courts will not interfere with the employment if it is regularly made by the Governor. The Attorney General is the chief law officer of the state and the legislature in its wisdom thought it well to leave with him and to his sound discretion, subject to the limitations of the statute, the authority to determine when it was best for the interest of the state that special counsel should be employed to assist him in the discharge of duties required by the statute.

If the construction contended for should be adopted and the court should undertake to control his discretion in requesting special counsel in cases in which he had the right to make such request, it would result in setting up its judgment in place of his as to when an emergency existed that would warrant the employment of special counsel; and in every case in which special counsel was employed there would be room for contention and litigation with its attendant delay and uncertainty until the matter had been adjudicated.

It was not intended by the legislature that the confusion which would follow such a division of discretionary authority, with the resulting detriment to the interest of the state in cases or matters of pressing urgency, should exist. We do not, however, mean that there is no limitation upon the power of the Attorney General in the matter of requesting the employment of special counsel, or that the statute gives him the unrestrained right to describe in as broad and general terms as he pleases the powers of the special counsel whose appointment he requests, or that the courts may not inquire into the validity of any employments made on his request.

The statute, as we have seen, makes it the duty of his office to attend to all litigation in which the state is concerned, "unless an emergency arises" which in his opinion "requires the employment of other counsel"; and means, as we clearly think, that the emergency must arise in respect to some particularly named suit, proceeding, prosecution or thing, and does not contemplate the general employment of special counsel to perform general legal services although such services in the opinion of the Attorney General might be of benefit to the state.

In other words, whenever special counsel are to be employed the request for the employment as well as the

contract of employment, must specify the nature of the suit, proceeding, prosecution or matter the special counsel are to be engaged to assist in, and the name of the person or corporation whose interests will be affected by the employment; and employments not so confined may be declared void by the courts.

When the discretion and authority of the Attorney General is thus limited to obtaining in particular emergency the benefit of the assistance of other counsel this exercise of discretion will fully protect the interests of the state and effectuate the intent of the statute.

The Attorney General is rightfully vested by the statute with large authority and wide discretion in the control of actions and proceedings in which the state is interested. He is the chief legal representative of the Commonwealth and in the conduct of his office has behind him all the power and resources of the state; and we think it would be against public policy and in violation of the statute to permit the Attorney General to surrender through a general and unlimited employment a large part of the authority and discretion vested in him by the law to special counsel engaged on a contingent or other basis, thus placing in their hands and under their control the resources the Commonwealth may have the aid of in the prosecution or defense of suits in which it is interested; and this, too, without the restraining influence of the responsibility that high official place and power naturally impose upon public officers.

Aside from this the Governor, who alone can make the contract of employment, is entitled to know the nature and character of the particular suit, proceeding, prosecution or matter in which the assistance of other counsel is required as well as the name of the person or corporation to be affected so that he may intelligently decide whether such employment is necessary; because the Governor is not obliged to adopt the request of the Attorney General, but may if he chooses decline to employ counsel although so requested by the Attorney General. So that the Governor equally with the Attorney General is responsible for the grant of authority attempted to be conferred upon the special counsel through a misconstruction of the statute, as their employment could not have been made without his consent. The Attorney General merely recommends or requests the employment and

the Governor may or may not, in his discretion, accede to the request of the Attorney General.

It will be observed that in his letter to the Governor the Attorney General recommended that the special counsel, whose employment he requested, be vested with authority by the Governor to "institute and prosecute to completion such suits or proceedings in the name of the Commonwealth as may be necessary to recover for the Commonwealth of Kentucky any property which, under section 192 of the Constitution of Kentucky, and section 567, of the Kentucky Statutes, has escheated to the Commonwealth of Kentucky, or which is now subject to be escheated to it, or which may be subject to escheat during the current year, 1919."

It will thus be seen that the special counsel were given unrestricted authority to institute and prosecute suits in the name of the Commonwealth anywhere in the state against any corporation they considered guilty of violating the escheat laws of the state. There was no limitation whatever upon their powers in this respect. No corporation to be proceeded against was named or described. They could bring one suit or a thousand suits of this nature, and it appears in this record that more than one hundred suits have been brought under their employment against as many different corporations.

It should, however, be said that the Attorney General in requesting that special counsel be employed and handed a roving commission to go about the state hunting out property that might be subject to escheat and bring suits to recover the same for the Commonwealth, and the Governor in granting the special counsel blanket authority for this purpose, were not without precedent. A like contract was made in 1907 between S. W. Hager, auditor, and George L. Pickett, an attorney, under which Pickett was given the unlimited right to institute such suits or proceedings as might be necessary to recover escheated property; and in Commonwealth v. Louisville Property Company, 128 Ky. 790, this court held that the contract was authorized by section 1622 of the Kentucky Statutes, giving to the auditor of the state power to employ with the approval of the Attorney General special attorneys to attend the claims of the Commonwealth for the recovery of escheated property.

This employment, however, was before the enactment. of the statute we have quoted defining the powers of the Attorney General and the Governor in respect to the employment of special counsel, and this statute has superseded section 1622, under which Pickett was employed.

Having the opinion expressed as to the construction of the statute we think the request of the Attorney General was broader than the statute authorized and that the contract made by the Governor under it was void. This being so, the special counsel were without authority to bring this suit and the lower court properly dismissed it.

Wherefore the judgment is affirmed.