## Chesapeake & Ohio Railway Company v. Commonwealth.

(Decided November 5, 1920.)

### Appeal from Campbell Circuit Court.

1. Attorney General—Deputies, Assistants and Substitutes.—The act of March 20, 1908 (Kentucky Statutes, sections 112-15), vesting in the attorney general charge of all litigation in which the state is interested, including actions to escheat property, repeals so much of prior acts as vested a like power in the auditor of public accounts.

2. Attorney General—Deputies, Assistants and Substitutes—Escheat.—Authority of special counsel to institute and maintain a suit to escheat property under a contract with the auditor became inoperative after the passage of the act of 1908, vesting the power of employment of special counsel in the attorney general and the Governor.

3. Attorney General—Deputies, Assistants and Substitutes.—Where a suit was instituted under an alleged employment between special counsel and the auditor, contrary to the act of 1908, it was discretionary with the attorney general as to what course he would pursue in regard to the suit.

4. Escheat—Right to Maintain Suit.—The right to maintain a suit to escheat property instituted under an alleged contract between special counsel and the auditor will be sustained in the absence of a proper showing that it was maintained and prosecuted contrary to the statute where the Governor, attorney general and auditor later sanctioned and approved the suit.

5. Attorney and Client—Authority to Institute Suit.—The defendant in any suit has the right to question by motion, supported by affidavit, the authority to institute or prosecute the action. When such an affidavit is filed the court, in the exercise of a sound discretion, may require plaintiff's counsel to show by what authority the suit was brought. Failure to show a sufficient authority to institute the action will justify the court in dismissing it without prejudice.

6. Escheat—Property Belonging to Railroad Company.—In a suit to escheat property belonging to a railroad company and adjacent to its right of way, though held for a period of more than five years and never used for railroad purposse during that time is not subject to escheat, where it is shown that the construction of new tracks is contemplated and that the increased tonnage being hauled by the company will necessitate additional tracks at an early date, and it is uncertain how much of the land sought to be escheated will be necessary for this purpose, and the remaining portion of said land can and probably will be used for the purpose of borrow-pits, storage of ties and other equipment, the erection of section houses and other purposes incident to the operation and maintenance of the railroad.

WM. A. BURKAMP and GALVIN & GALVIN for appellant.

BRENT SPENCE and GEORGE HEROLD for appellee.

OPINION OF THE COURT BY JUDGE QUIN—Reversing.

In this suit it was sought to escheat to the Commonwealth twenty parcels of land owned and held by defendant in the towns of Bellevue and Dayton, contrary to the provisions of sections 192 of the Constitution and 567 of the Kentucky Statutes.

We will refer to the parties as they appear in the trial court.

Instituted in the name of the Commonwealth, it is alleged in the petition that the suit was authorized by a writing made in behalf of the Commonwealth by the auditor of public accounts, and George J. Herold and Brent Spence, and that same had been approved by the attorney general and Governor of the Commonwealth. Having been served with summons, defendant moved the court (1) to require plaintiff to file the writing referred to as the authorization for the institution of the action; (2) to dismiss the action on the ground that counsel had no legal right to institute or maintain same. The company also filed general and special demurrers. The petition was filed May 22nd, 1916, the motions and demurrers were filed June 24, 1916, and on June 30, 1916, plaintiff

filed a writing signed by the Governor, attorney general and the auditor of the state, authorizing the filing of this action, and setting forth the employment of Messrs. Herold and Spence to prosecute said action in the name and on behalf of the Commonwealth of Kentucky. The motions and demurrers were overruled.

The answer put in issue the allegations of the petition, pleading affirmatively want of authority in the auditor to employ counsel and that all the land described was held with the intention of devoting it to the necessary and proper use of defendant's legitimate business.

A demurrer to the several paragraphs of the answer was sustained in part. The petition was dismissed as to seventeen of the lots, the court holding that as to lots Nos. 1, 2 and 18, the evidence was sufficient to order them escheated. It is from said judgment the present appeal is prosecuted.

By section 1622, Kentucky Statutes, authority was given the auditor, with the approval of the attorney general, to employ an attorney to attend to claims of the Commonwealth for the recovery of escheated property, the compensation of such attorney to be fixed by written contract approved by the Governor. Such an employment under section 114 and 1622, Kentucky Statutes, was sustained in Commonwealth v. Louisville Property Co., 128 Ky. 790, 109 S. W. 1183.

The contract under which that suit was instituted was executed before the act of March 20, 1908, now section 112-15, Kentucky Statutes. The latter act, which repealed all conflicting laws, provides that the attorney general shall be the chief law officer of the Commonwealth and shall appear for the Commonwealth in the trial and argument of all cases in which the Commonwealth is interested, unless in an emergency the employment of other counsel is required. The act provides how additional counsel may be employed with the approval of the Governor and attorney general.

Commonwealth v. Louisville Property Company, 141 Ky. 731, 133 S. W. 759, involved the same contract, held valid in 128 Ky. 790, 109 S. W. 1183, *supra*. This second suit was filed after the passage of the act of 1908, and in an affidavit accompanying a motion to dismiss the action on the ground that counsel representing the Commonwealth were without authority to bring or maintain the suit, it was stated that the contract which had been signed by S. W. Hager, auditor at the time of its execution, ex-

pired with Hager's term of office, and the authority vested in the auditor to employ counsel had been repealed by the later statute. The action was dismissed by the lower court, and this ruling was sustained on appeal.

It appeared from the affidavit filed that the attorney general advised special counsel that the institution of the action was unauthorized and directed him to dismiss the suit. In this connection the court said:

"The attorney general had the legal right, therefore, to declare Pickett and his associate counsel without authority to bring or maintain this action, and also to direct its dismissal; for not only did the statute, *supra,* upon becoming operative abrogate the contract made by Pickett with the former auditor and end his employment thereunder, but it repealed the former statute from which that officer derived authority to employ him."

The defendant in any suit has the right to question by motion, supported by affidavit, the authority of counsel representing plaintiff to institute or prosecute the action. When such an affidavit is filed the court in the exercise of a sound discretion may require plaintiff's counsel to show by what authority the suit was brought, failure to show sufficient authority to institute the action will justify the court in dismissing it without prejudice.

McAlexander v. Wright, 3 Mon. 189; Belt v. Wilson, 6 J. J. Mar. 495; Commonwealth v. Roberta Coal Co., 186 Ky. 394, 216 S. W. 584.

This procedure was not followed in the present action. No affidavit was filed in support of the motion to dismiss. Had this been done a different question would have been presented.

In Commonwealth v. Louisville Property Co., *supra* (second case), it is said:

" . . . nor is it in our province to declare whether the attorney general acted wisely in authorizing the dismissal of this case in the court below. As the case was under his control the course to be pursued was a matter that addressed itself to his official discretion."

This being true, the state of the present record considered, the writing filed June 30, 1916, will be treated as sufficient authority under the statute to maintain the action.

On the merits of the case the court properly held that seventeen of the parcels of land described in the petition

were not subject to escheat, but erred in escheating the three remaining lots.

Appellant's right of way through the towns of Bellevue and Dayton was purchased from the Maysville & Big Sandy Railway Company about the year 1900. In securing its right of way appellant's predecessor was compelled in some instances to buy entire lots in the two cities. The road bed was constructed diagonally across one corner of the lot, bounded by LaFayette, Taylor and Grand View avenues and Covert Run, in the town of Bellevue, thus leaving two triangular lots, being parcels one and two described in the petition, the former containing 2.3 acres, the latter .48 acres. The railroad is upon an embankment between these lots and from fifteen to forty feet above the level thereof.

Parcel 18 is located in the town of Dayton, and consists of practically a city block divided into a series of small lots bounded by McKinney, Brooklyn and Ninth streets; here too the tracks were constructed diagonally across a corner of the lot. This parcel of land contains about .73 acre and is considerably higher than the road bed, to-wit: from forty to eighty feet above the level of the tracks.

For appellee it is testified that no part of the three lots has ever been used for railroad purposes, nor is the topography of the ground such that any part thereof can ever be so used.

For appellant it is said that a portion of the lots has been used in the past for borrow pits, and that for some years the company has been contemplating the construction of several additional tracks through the towns of Bellevue and Dayton.

The above named cities are located between Cincinnati and Silver Grove; at the latter point the company has immense yards, consisting of about forty miles of tracks with a capacity sufficient to accommodate 3,200 cars. Coal in enormous quantities west bound from the Kentucky, Virginia and West Virginia fields is brought to Silver Grove yards in train loads of from eighty to eighty-five cars each. The strength of the bridges and viaducts west of Silver Grove is such that the heavy locomotives in use east of that point cannot be operated any further west, thus making it necessary to break trains west bound from this point into two sections. The same is true of trains moving eastwardly between Cincinnati and Silver Grove. On an average 1,000 coal cars are

daily hauled over these tracks, in addition to other freight and the passenger trains, resulting in the frequent congestion of traffic.

New mines are being opened and developed along the lines of the C. & O. which will cause a considerable increase in the traffic and will necessitate the construction of new tracks between Silver Grove and Cincinnati.

The freight car miles, that is the number of cars handled multiplied by the miles the car travels, in 1917 showed an increase over 1918 of 126.4%.

The volume of business in coal and coke alone was greater by about 20% in July, 1918, as compared with that hauled in the preceding July. The only reason the tracks have not been built sooner is that sufficient funds have not been available for this purpose, but such improvements are contemplated at an early date, likewise a considerable expansion of the Silver Grove yards. The exact location of the new tracks and their number remain to be determined, all may be placed on one side of the present tracks, or some on both sides, hence it is impossible to tell how much of the area of the lots will be necessary for these improvements. Two additional tracks will require the major portion of lots one and two; only a small part of parcel 18 will be occupied by the new tracks, but the soil can and will be used for borrow-pits. Furthermore, the unused part of the three parcels can be used for the purpose of storing ties and other material, for the erection of section houses or put to other necessary use incident to the maintenance and operation of the railroad. Upon the showing made we do not think the property is subject to escheat.

The facts presented by this record are not unlike the situation in L. & N. v. Commonwealth, 151 Ky. 325, 151 S. W. 934, 44 L. R. A. (N. S.) 301, in which it was sought to escheat certain lots in Shelby county. Likewise in the case of Louisville Property Co. v. Commonwealth, 146 Ky. 827, 143 S. W. 412, 38 L. R. A. (N. S.) 839, relative to some lots in Guthrie; here it was held that the use of a reasonable amount of railroad property near its depot, for the erection of a hotel to accommodate its passengers and employes, and for the establishment and maintenance of a park was proper. In this case it was also held that an unused tract of land was not subject to escheat in view of the testimony of the company's officials that it might become necessary for additional tracks.

In German Insurance Co. v. Commonwealth, 141 Ky. 606, 133 S. W. 793, the court says the only question is as to whether the property was needful or necessary in the conduct of the company's business, or that it might become necessary, and that the right to hold is measured by this single inquiry. The time property is held by a corporation is not the test of the right to hold but it is the purpose for which it was acquired and the ever present intention of devoting it to a proper and necessary use. The purpose of acquisition, the intention with which it is held and the use to which it may be and is designed to be put are to be considered. Railroad corporations should be permitted to own as much real estate as will enable them to carry out the purpose of their creation and existence. See also Commonwealth v. Mehler & Ecksten-kemper, 183 Ky. 11, 208 S. W. 13.

On the whole case we think the proof establishes the fact that lots Nos. 1, 2 and 18 were held by the appellant in anticipation of their future use for legitimate and necessary purposes and that its present plan is to devote them to such use. This being true the court erred in ordering the three parcels escheated.

Wherefore the judgment on the cross-appeal is affirmed and on the original appeal is reversed with instruction to dismiss the petition.