20 433
43a 323

GRAND LODGE OF MASONS, Respondent, *vs.* KNOX, Appellant.

1. In an action upon bonds given for the purchase money of land, the defendant may set up by way of recoupment damages for the removal and conversion of *fixtures*, without his knowledge or consent, after the contract of sale and before a formal transfer of the land and the execution of the bonds.

### *Appeal from Marion Circuit Court.*

This was an action upon two bonds for the payment of one thousand dollars each. The defendant, in his answer, set up as a defence that the bonds were given for part of the purchase money of what was known as the Marion College tract of land, with the buildings and improvements thereon situate, bought by him of plaintiff; that the contract of sale was made on the the 21st of September, 1849, and the bonds executed and delivered on the 29th of October following; that at the time of the sale, "there were within and permanently attached to, and

constituting a part of a certain brick house called " the chapel," standing on said land, five several cases or closets, made and designed for book cases ; and that afterwards, and before the possession of said land and premises was delivered to the defendant, and before the delivery of said bonds to the plaintiff, the plaintiff, by her agents, without the knowledge or consent of the defendant, took out from the walls of said house, and carried away and converted to her own use the said cases or closets, and in taking the same out, injured, broke and mutilated the chimney, chimney boards, frames, casings, fire-places and plastering." The defendant claimed a deduction from the amount of the bonds sufficient to cover the damages sustained by a removal of the cases.

At the trial, the defendant offered evidence that the terms of the sale of the college property were agreed on between the defendant and an agent of the plaintiff on the 21st of September, 1849, and that they were afterwards to meet in St. Louis and execute the writings ; that the defendant then returned to his residence in St. Louis county ; that on the 29th of October following, he met the plaintiff's agent in St. Louis and executed the bonds sued upon in part payment for the property ; that at the time of the sale on the 21st of September, there were in the chapel on the land five book-cases, which were seen by the defendant when he agreed to purchase the land, and that he did not again see the property until after the execution of the bonds sued upon ; and that in the mean time the book-cases were removed under the authority of the plaintiff.

There was conflicting evidence as to whether the cases removed were fixtures or not, one witness, (whose deposition, taken by the plaintiff, was read by the defendant to prove the removal,) stating that they were fastened to the wall and otherwise attached to the building, and another witness stating differently.

After the defendant had closed his case, the Circuit Court, on motion of the plaintiff, excluded all the evidence offered by him, to which he excepted, and after a verdict for the plaintiff,

and an unsuccessful motion for a new trial, appealed to this court. The case was orally argued by Mr. Knox, for appellant, and Mr. Broadhead, for respondent.

*Knox & Kellogg*, for appellant, in their brief cited *House* v. *Marshall*, (18 Mo. Rep. 369,) and *Taylor* v. *Maguire*, (12 Mo. Rep. 317,) upon the point that the Circuit Court erred in excluding the evidence offered by the defendant below.

*Broadhead*, for respondent. 1. The defence set up is a claim for unliquidated damages, and is not the subject of set-off. 2. The answer does not sufficiently set out the terms of the contract of sale, and therefore evidence to prove a failure of consideration is out of place.

LEONARD, Judge, delivered the opinion of the court.

The question to be decided here is, whether a purchaser of real property may set up, in diminution of the price, the value of fixtures upon the premises during the treaty and embraced in the sale, which the vendors subsequently, and before the completion of the transaction, removed and appropriated to their own use, without the consent or knowledge, and against the will of the purchaser. This claim having been set up in the answer and the evidence rejected upon the trial, the judgment must be reversed, if the rejected evidence ought to have been retained in the cause. The record does not show the ground upon which the court proceeded in striking it out; but it is argued before us, for the plaintiff, that it is a claim for unliquidated damages, and therefore not allowable as a set-off; and on the other side, that it is good by way of recoupment of damages, which is the matter we have considered, and upon which the cause has been settled here. This doctrine of recoupment, though of ancient origin, has been recently greatly extended in its application, and it may not be improper, therefore, on the present occasion, to go more at large into it than is necessary for the decision of this cause, and in doing so, to refer to the leading American cases, for the purpose of showing the application, extent and limitations of the rule.

The common law, confining every suit to the particular subject of litigation that gave rise to it, rigidly excluded all matters of set-off; but the English court of chancery, extending the narrow remedies of the common law, in order to prevent circuity of action and suppress multiplicity of litigation, introduced the principle into their system from the civil law, where it existed under the name of compensation. This method of settling cross demands in one suit, when once introduced, recommended itself so strongly by its natural equity and practical usefulness, that it was ultimately adopted, to a limited extent, both in England and the United States, in various statutes of set-off, and still further, in our own state, by the statute in relation to the failure of consideration. These acts concerning set-off, however, only recognize the right of persons mutually indebted to one another in ascertained amounts, under independent contracts, to set-off their respective debts by way of mutual deduction, so that in any action brought for the larger sum, the residue only should be recovered; and so excluded from their operation claims for unliquidated damages, occasioned either by wrongs done or obligations violated. These were left to the common law, and the same reasons that forced the doctrine, to a partial extent, into the statute law of the land, still continuing to operate, the old doctrine of recoupment has been recently greatly extended in its practical application.

In Dyer's Rep. (2–6,) it is laid down in the reign of Henry VIII: "If a man disseize me of land, out of which a rent charge is issuant, which has been in arrears for several years, and the disseisor pay it, if the disseisee recover in our assise, the rent that the disseisor paid shall be recouped in damages."

Again, in Coulter's case, (5 Rep. 2–31,) it is said: "And as to the case of recouper in damages, in the case of rent service, charge or seck, it was resolved that the reason of the recouper in such case is, because otherwise, when the disseisee re-enters, the arrearages of the rent service, charge or seck would be revived, and therefore, to avoid circuity of action, and " *circuitus est evitandus, et boni judicis est lites dirimere,*

*ne lis ex lite oriatur,*" the arrearages during the disseisin shall be recouped in damages."

*Pullen* v. *Stamforth*, (11 East, 232,) was an action on a policy of insurance, upon a voyage to Russia, with a provision that, if the cargo were denied permission to be landed, the master should, on his return, receive in London 2,500 pounds. The outward cargo was denied landing, but the master, instead of returning direct, went by Stockholm and earned freight. The master claimed the 2,500 pounds, but the freight earned was recouped out of the sum agreed to be paid.

In Barbour's law of set-off, (26,) it is laid down that " there is a species of defence somewhat analogous to set-off in character, which a defendant, in some cases, is allowed to make, and which is called recoupment. This is where the defence is not presented as a matter of set-off arising on an independent contract, but for the purpose of reducing the plaintiff's damages, for the reason that he himself has not complied with the cross obligations arising under the same contract. Thus, in an action to recover compensation for services rendered, the employer is entitled to show, by way of recoupment of damages, the loss sustained by him through the negligence of the person employed, and so in regard to a breach of warranty." Recoupment, in its origin, we are told, (Sedgwick on Dam. 3d ed., 431,) was a mere right of deduction from the amount of the plaintiff's recovery, on the ground that his damages were not really as high as he alleged;" and Viner's Abridgment, tit. "Discount," (3, 4, 9, 10,) is referred to as authority.

The American cases, however, at least in New York, Massachusetts, Alabama, and some few other states, now go the full length of declaring that all matters of counter claim, arising out of the same transaction, and not technically the subject of set-off, can be set off by way of recoupment of damages, provided the defendant has been properly apprised of the defence, and these cases will now be briefly referred to.

In a suit for the price of goods sold, (*McAlister* v. *Reab*, 4 Wend. 483,) and same case, (8 Wend. 109, in error,) the

damages occasioned by a breach of the warranty were received in diminution of the price. Mr. Chancellor Walworth said : " I consider the rule adopted on this subject perfectly just and equitable, when the defendant has notice of the defence intended to be set up, and calculated to do complete justice between the parties, without putting them to the expense of two suits, when one is much more likely to effect the object of fair litigation. Indeed, if one of the parties is insolvent, it is the only way in which justice can be done ; at least as to small demands that will not bear the expense of a suit in chancery to obtain an equitable set-off."

In a suit for the contract price of building a wall, (*Jose* v. *Van Eps*, 22 Wend. 155,) the defendant was allowed to diminish the amount of the plaintiff's recovery by his own damages, sustained on account of the plaintiff's failure to construct the wall according to his covenant.

In a suit upon a note for the price of wood sold, (*Bollerton* v. *Purce*, 3 Hill, 171,) the defendant was allowed, out of the price to be recovered, the damages sustained in the destruction of part of the wood by a fire against which the vendor had guarantied. Upon a motion for a new trial, Bronson, Justice, said : " It is not a question of set-off, as the plaintiff's counsel seems to suppose, but of recoupment of damages. When the demands of both parties spring out of the same contract or transaction, the defendant may recoup, although the damages on both sides are unliquidated ; but he can only set-off when the demands of both parties are liquidated or capable of being ascertained by calculation." To the objection that the damages claimed did not spring out of the contract of sale, but arose under a collateral agreement to indemnify against fire, it was said " that, although there could be no recoupment by setting up the breach of an independent contract on the part of the plaintiff, here the bargain was one and the same."

In *Allan* v. *Whitney*, (1 Hill, 484, and 1 Comst. 305,) in a suit for rent, the lessee set off the damages sustained by reason of the lessor's representation that the leased premises

embraced ground afterwards ascertained to belong to another, and the amount recouped was the rent paid for the use of the ground.

In a suit upon a bond for the price of land sold, ( *Van Eps* v. *Harrison*, 5 Hill, 6,) the buyer set-off his damages occasioned by the vendor's fraud in the sale ; and to the same effect is *McCullough* v. *Cox*, (6 Barb. Sup. Ct. Rep. 386.)

The same liberal doctrine has been adopted in Massachusetts. In a suit by a factor, ( *Dodge* v. *Tileston*, 12 Pick. 329,) to recover against his principal, the defendant was allowed to set up the plaintiff's negligence in selling the defendant's goods by way of diminishing the damages ; and after reviewing the cases, the court said : " The question, for a time, may have ranked in the class of legal uncertainties, but it appears to us at present to be settled on reasonable and satisfactory principles."

In *Hunt* v. *Otis*, (4 Met. 464,) the plaintiff sued for his wages, and the company were allowed to set off their damages sustained by reason of the plaintiff's leaving their service, contrary to an implied stipulation to give them four weeks' notice of an intention to quit.

It is received also, in its largest extent, in Alabama. In *Hatchett* v. *Gibson*, (13 Ala. Rep., new series, 587,) a warehouseman sued for advancements made on cotton deposited with him, and the defendant was allowed to set off, by way of recoupment, the damages he had sustained by the destruction of his cotton through the plaintiff's negligence. The court say : " The contract between the parties was, that the latter should deposit his cotton in the warehouse of the former, and that the plaintiff should advance on it, retaining a lien for his reimbursement. To this contract, the law tacitly annexed the stipulation that the plaintiff should take ordinary care in its preservation, and if he did not, would pay the defendant for any loss resulting from neglect. These several stipulations, although they may embrace distinct duties and obligations, constitute one entire contract. This is sufficiently shown by their mere statement, and the breach of any undertaking on the part

of the plaintiff, by which the defendant sustained damage, would furnish a proper ground of recoupment in the present action, which is brought to recover back the advances made by the warehouseman."

Several of the states, however, have not yet carried the doctrine to the extent that it has been carried in the states to whose decisions we have referred, although the decisions in all the states are evidently tending rapidly that way, and the English courts, much less inclined than our own, to relax old rules, have, as yet, fallen far short of the American decisions. They now hold, however, contrary to their decisions prior to *Basten* v. *Butter*, (7 East, 479,) that, upon a sale or a special contract for work, at a specific price, the defendant may show, in diminution of the amount to be recovered, a breach of warranty or the failure of the contractor to do the work as required; and in *Mandell* v. *Steel*, decided in 1841, (8 Mees. & Welsb. 858,) Parke, Baron, addressing himself to this subject, remarked : " Formerly, it was the practice, where an action was brought for an agreed price of a specific chattel sold with warranty, or of work which was to be performed according to contract, to allow the plaintiff to recover the stipulated sum, leaving the defendant to a cross action for breach of the warranty or contract ; in which action, as well the difference between the price contracted for and the real value of the articles or of the work done, as any consequential damage, might have been recovered ; and this course was simple and consistent." " But after the case of *Basten* v. *Butter*, a different practice, which had been partially adopted before in the case of *King* v. *Basten*, began to prevail, and being attended with much practical convenience, has since been generally followed ; and the defendant is now permitted to show that the chattel, by reason of the non-compliance with the warranty, in the one case, and the work, in consequence of the non-performance of the contract, in the other, were diminished in value. It is not so easy to reconcile these deviations from the ancient practice with principle, in those particular cases above mentioned, as it

is in those where an executory contract, such as this, is made for a chattel to be manufactured in a particular manner, or goods to be delivered according to a sample, where the party may refuse to receive, or may return, in a reasonable time, if the article is not such as bargained for ; for, in these cases, the acceptance or non-return affords evidence of a new contract on a *quantum valebat.* It must, however, be considered that, in all these cases of goods sold and delivered with a warranty, and work and labor, as well as the case of goods agreed to be supplied according to a contract, the rule which has been found so convenient is established, and that it is competent for the defendant, in all of those, not to set-off, by a proceeding in the nature of a cross action, the amount of damages which he has sustained by breach of the contract, but simply to defend himself, by showing how much less the subject matter of the action was worth by reason of the breach of contract."

How far this court would feel itself bound to go, in allowing counter claims, springing out of the same transaction, to be set up in diminution of the damages to be recovered, cannot now be determined. We are only to apply the law to the cases that come before us for judgment, and to that extent only are the decisions we make binding as authority upon ourselves or others. In the present instance, however, we have no hesitation in declaring that the rejected evidence ought to have been retained and allowed to go to the jury. Of course, our opinion is predicated upon the supposition that the cases removed were fixtures embraced in the sale, and removed by the plaintiffs after the bargain and before the formal transfer of the property, without the knowledge and against the will of the purchaser, and appropriated to their own use. In *House* v. *Marshall,* (18 Mo. Rep. 368,) the damages sustained by a purchaser of land, by reason of the fraudulent representations of the seller during the treaty, were allowed to be set up in diminution of the price sought to be recovered ; and although the conduct of the present plaintiff, in removing the cases, acting, as we suppose he did, upon the ground that they were not fixtures, cannot be

characterized as fraudulent, in any odious sense of the word, yet it resulted, if the facts were as the defendant maintains, in the same injury to his rights, and entitles him to the same remedy. The other judges concurring, the judgment is reversed and the cause remanded.