JUDGE PETEES
delivered the opinion oe the court.
H. I. Todd, having completed one term as lessee and keeper of the state prison, was elected for a second term, to commence on the 1st day of March, 1867. On the 9th of the same month an act of the General Assembly was approved fixing the annual rent to be paid by the lessee to the state at the sum of sixteen ■ thousand dollars. On the same day another act was passed providing for certain improvements to be made to the prison, such as alterations in the shops, additions to the cell-houses, and for other necessary repairs.
Todd failed to execute bonds for the rent as fixed by the act of March 9, 1867, but retained possession and continued to act as keeper and lessee; and by an act approved March 7, 1868, he was allowed until the 15th of March, 1869, to pay the rent of the first year of his term, “provided that he on or before the 15th day of April, 1868, executed bond, with security approved by the governor, for the rent fixed at sixteen thousand dollars per annum by the act of March, 1867.” This condition was accepted by Todd, and the required bond executed on the 28th of the same month.
In June, 1869, suit was brought in the Franklin Circuit Court, in the name of the commonwealth, against Todd and his sureties to recover thirty-two thousand dollars, the amount claimed to be due from him for rent at the expiration of' two years of his term. At the same time another suit was instituted against him and his sureties by the commissioners of the sinking fund to recover three thousand six hundred dollars, the accrued interest on the thirty thousand dollars loaned Todd under the authority conferred on said commissioners by the first subsection of section 1 of the act of March 9, 1867.
As matters of defense to the actions, Todd pleaded that he entered upon the discharge of his duties as keeper and took possession as lessee of the prison on the 1st day of March, 1867, and on that day executed bonds for the rent pursuant to the ■ *712 provisions of the act of March 2, 1863, which was then in full force and effect, which bonds were approved and accepted by the governor, whereby he acquired certain vested rights as lessee which the state could not rightfully disregard; that afterward the state through regularly-appointed commissioners disturbed his possession of the leased premises, and interfered with the convict labor secured to him by law and the terms of his lease by tearing down and rebuilding the hemp-factory, thereby depriving him of the use of machinery necessary for the manufacture of hemp into bagging, and placing it out of his power to keep, employed a large number of convicts confined in the prison, and compelling him to employ additional guards and incur other extraordinary expenses; by reason of all which he was greatly damaged. He also pleaded that by an act of the General Assembly, approved February 6, 1869, he had been released from the payment of sixteen thousand dollars per annum rent, and required to pay six thousand dollars per annum for the first two and eight thousand dollars per annum for the last two years of his term. He asked to be allowed the benefit of this release, and that the damages claimed by him should be ascertained and set off against the amounts claimed against him, and for such other proper relief as he might be entitled to.
The two actions were consolidated, and on the motion of appellants, notwithstanding the objections of Todd, were transferred to equity, and referred to a special commissioner to take proof and report at the next term. The report was made, to which both parties excepted, and the consolidated causes were submitted on the exceptions and also upon the merits.
The court adjudged that Todd was entitled to the benefit of the legislative release, and to have his claim for damages allowed to the extent of the amount then involved in the actions, and dismissed the petitions; and the commonwealth and the commissioners of the sinking fund appeal, and Todd, *713 by cross-appeal, complains that the judgment is not as favorable to him as it should have been.
It is claimed that the act of the 6th of February, 1869, reducing the rent of the prison has the effect of-reducing the resources of the sinking fund, and is therefore unconstitutional and void.
By an act of the legislature passed in 1838 the annual profits arising from the penitentiary are set apart for the benefit of the sinking fund. While that act was in force the present constitution of this state ivas adopted, the 34th section of the 2d article of which provides that the General Assembly shall have no power to pass laws to diminish the resources of the sinking fund as now (to wit, 1850) established by law.
We do not doubt that such profits as may be realized from the penitentiary under the management prescribed by the legislature are by this provision in the organic law set apart to the sinking fund, and sacredly dedicated to the payment of the public debt. But it does not therefore follow that the legislature is deprived of the power originally reserved to it to regulate the management of this institution. It is under no constitutional obligation to attempt to make profit in its management, nor to adhere to contracts from which profits would likely be realized, v/hen a sense of justice to the lessee or good policy might require them to be modified or canceled. The consummation of the contract with Todd did not ipso facto convert the stipulated rental into a part of the sinking fund. The contract still remained subject to the control of the legislature, and with Todd’s consent might have been rescinded or set aside, and the system of leasing altogether abolished. But they had no power to limit or abrogate the legislative discretion, and to compel it to enforce to the letter a contract which, in its discretion, might be regarded as unjust to the lessee, or likely to subvert the purposes for which the prison was founded. (Simpson County Court v. Arnold, *714 7 Bush, 353; McReynolds v. Smallhouse, 8 Bush, 447.) We therefore concur with the circuit judge that the act in question is constitutional.
"We regard it as immaterial whether Todd held under the act of 1863 or that of 1867, as under either he was entitled to the use and control of the prison, and all the buildings attached thereto, together with all the machinery, fixtures, tools, and other property of the state therein, as well as to have all the proceeds of the labor of the convicts, and all the profits and emoluments from the operations of the penitentiary, in consideration of which he ivas to pay a fixed rent; and of course, as in all other contracts, his liability to pay the rent depended upon the compliance by the state with its undertaking to permit him to enjoy uninterrupted possession of the leased premises, machinery, fixtures, etc., and to employ the convicts at such labor (subject to the regulations prescribed by law) as would yield to him the highest profits. The commonwealth, however, had the right, notwithstanding Todd’s lease, to make necessary and proper improvements to the prison; but in exercising this superior right it could not in law or good conscience disturb the possession of the leased premises, and interfere with the convict labor which had been guaranteed to Todd, and at the same time insist that he shall pay the full amount of the rent he had agreed to pay in case all his rights and immunities under the lease had been sacredly respected.
Nor is Todd precluded from asserting his claim for a credit for such damages as he may have sustained, in consequence of any disturbance of his possession growing out of the improvements to the prison, because he was the contractor who made them. In accepting the contract to make them he in a certain sense acted under duress. The state exercised a sovereign power which a mere citizen could not resist. If Todd had declined to take the contract ■ himself, and had refused admittance to the party to whom it was awarded, he *715 would have acted in violation of law, and subjected himself to suspension by the governor and removal from his office by the joint vote of the two houses of the General Assembly. (Sec. 3, art. 1, chap. 74, R. S.) He was entitled to the benefit of his lease only so long as he remained keeper; consequently he should not be subjected to the same rule in determining whether, by accepting the contract and voluntarily making the improvements to the prison, he waived his right to claim damages as though the lessor had been an individual having no greater rights and possessing no superior powrers to himself.
We therefore conclude that he had the right to set off such damages as he could establish he sustained against the rent sued for by the commonwealth.
We do not propose to inquire whether or not the circuit judge erred in assessing those damages. The evidence is in some degree conflicting; but we can not say that the judgment is flagrantly wrong. That question should have been submitted to a jury. The issues involved in the action were purely legal issues, and the assessment of unliquidated damages is peculiarly within the province of a jury; yet the commonwealth, upon its own motion and against Todd’s objections, had the causes transferred to equity, and the judge substituted for a jury. If he had decided against Todd, he might have asked a reversal for the error of transferring a case properly triable by a jury to equity; but the party responsible for the error has no right to ask that the finding of the judge as to the facts shall not be treated with the same consideration as though the parties had agreed to submit the law and facts of an ordinary action (and these are ordinary actions) to the judge without the intervention of a jury.
The judgment as to the rental of the penitentiary is therefore affirmed.
But the court below erred in failing to render judgment against appellees for the interest which had accrued on the *716 thirty thousand dollars loaned by the commissioners of the sinking fund to Todd. This loan was out of money in the sinking fund; it, with the interest, constitutes a part of that fund. The General Assembly may by legislative enactment apply it, or any part of it, to the payment of debts due from the state, and the commissioners may themselves direct the payment of recognized claims against that fund out of it, in conformity to the laws regulating their powers and prescribing their duties; but the courts have no power to determine how, when, or to what purpose any portion of this fund shall be devoted, and hence no authority, when the commissioners sue, to set off against the moneys subject to their custody and control, for the purposes aforesaid, claims that a party sued may have against the general revenues of the state.
It is not necessary to determine on Todd’s cross-appeal whether the court below should have fixed the amount of damages to which he may be entitled, as he can not maintain an action against the commonwealth. His right to assert his claim for damages in actions against him by the commonwealth rests upon that broad principle of justice which allows every one who is sued to show, as matter of law, that he does not owe the demand for which he is sued. Todd therefore had a right to have his claim adjudicated to the extent that he was asserting it as a defense to shield himself, but no further.
It was erroneous to compel Todd to pay the allowance to the commissioners, which was a part of the costs of court incurred, as Todd was successful in the action. He made good his defense to the action of the commonwealth against him; and while he can not recover costs against it, he should not be burdened with the general costs of the litigation.
"Wherefore the judgment dismissing the petition of the commonwealth is affirmed on its appeal, and reversed on Todd’s cross-appeal to the extent indicated. On the appeal of the *717 commissioners of the sinking fund the judgment is reversed, and the cause remanded with directions to render judgment in their favor.
Judge Pryor did not sit in this case.