STATE EX REL. ATTORNEY GENERAL *v.* LOVETT-CARNAHAN COMPANY.

Opinion delivered February 25, 1929.

44

46

H. W. Applegate, Attorney General, and Wooldridge & Wooldridge, for appellant.

A. J. Johnson and Rowell & Alexander, for appellee.

HART, C. J., (after stating the facts). Counsel for appellant rely upon the case of *Willey & Brothers v. State, ex rel. Attorney General,* 178 Ark. 662, 12 S. W. (2d) 17, for a reversal of the judgment. They claim that, under the principles of law decided in that case, the circuit court erred in not directing a verdict for the State for the amount sued for, which represented the balance due the State for the hire of the convicts during the time they were worked by appellee. In the Willey case, as in the present case, the State Board of Charities and Correction made a contract for the hire of the convicts pursuant to an act of the Legislature. Acts of Arkansas 1925, p. 446. Section one of the act provides that the board is authorized to hire any convicts in the State Penitentiary

to work upon public highways in the State, or to do any other useful agricultural work, provided that the convicts, while so employed, shall at all times be under the management and custody of the board. The section also contains a proviso that said convicts shall not be leased for any definite period, but shall be worked by the day for reasonable wages, to be paid by the person for whom said work shall be done, provided said wages shall not be less than $1.50 a day.

In the Willey case the board entered into a contract with the appellants to furnish them thirty-two convicts to be used in cultivating their land from February 12, 1926, until December 31, 1926, at a price of $1.75 each per day, and it was provided that appellants should build a modern-style stockade to house the men. Thereafter, on May 10, the contract was modified by reducing the price of each convict's pay from $1.75 to $1.50 per day. On October 28, 1926, the parties executed another contract for the year 1927 by which the State agreed to furnish forty convicts to cultivate 500 acres of land for appellants on the shares, that is, for one-half the crops grown on said land. A new Board of Charities and Correction came into office in January, 1927, and this board demanded of appellants payment for the use of the convicts for the year 1926. Appellants refused to pay this until the State assured them that it would carry out the contract for the year 1927. In the first part of February, 1927, the State withdrew all its convicts from appellants and instituted this action to recover the amount due under the contract for 1926. The court properly refused to allow appellants damages for a stockade built by them under the contract for the hire of the convicts during the year 1926. The contracts for the hire of the convicts for the two years were separate and distinct agreements, made on different days, and the two contracts had entirely different terms. Under the statement of facts the stockade was built under the terms of the contract for 1926, and the court properly held that the expense of building this stockade could not

be offset against an alleged breach of the contract by the State for the year 1927. The court also properly held that appellants could not offset the rental value of 350 acres of land against the alleged breach of the contract by the State for 1927. The court pointed out that, under the statute, the board had no right to lease the convicts except for a money consideration, as provided in the statute, and had no power or authority to make a contract for a definite period. Thus it will be seen that no rights whatever accrued to appellants under the terms of the contract for 1927.

In the instant case the facts are essentially different. It is true that the contract of hiring went beyond the authority conferred by the statute as to the length of time it would run. But this did not have the effect to abrogate the whole contract. It will be observed that the statute confers authority upon the board to hire the convicts to do agricultural work, provided that the convicts should not be leased for any definite period of time, but should be worked by the day at wages not less than $1.50 per day. Now, it is a matter of common knowledge that it takes a year to make a cotton crop in this State, which the record shows was the kind of crop contemplated by the parties. While the terms of the statute prohibited the leasing of convicts for any definite period of time, still the parties might have contracted with reference to the customs and usages of the country in making and gathering crops in this country; and the contract, as thus construed, would mean that the board had a right to hire the convicts to appellee for $1.50 per day each for the year 1926, with the condition or proviso that the State might retake the convicts at any time it was deemed necessary or expedient to do so.

Pursuant to this contract, the board allowed lessee to use the convicts in making and gathering its crop for 1926, and the board which was then in existence continued to allow appellee to use the convicts in 1927 until its place was taken by a new board, about the middle of January. The new board canceled the con-

tract with appellee on the 3d day of February, 1927, and retook the convicts. When the board allowed appellee to lease the convicts in 1927, this created an implied obligation on the part of the State to renew, or rather continue, the contract for the year 1927. The proof on the part of the State shows that a certain fixed and definite amount was due for the hire of the convicts for the year 1926, and up to February 3, 1927, and it is earnestly insisted that appellee has not the right to ask any affirmative relief against the State on account of any alleged breach of the contract, or even to use any claim for alleged damages for the breach of the contract, as a defense to the action instituted by the State for the recovery of the amount due the State for the hire of the convicts for the year 1926.

We cannot agree with counsel for the State in this contention. It is true that article 5, § 20, of our Constitution provides that the State of Arkansas shall never be made a defendant in any of her courts, and that this applies to the governmental agencies of the State, because an action against them is, in effect, one against the State. *Pitcock* v. *State,* 91 Ark. 527, 121 S. W. 742; *Jobe* v. *Urquhart,* 98 Ark. 525, 136 S. W. 663; and *Allen Engine Company* v. *Kays,* 106 Ark. 174, 152 S. W. 992. And this court has held that the constitutional prohibition against making the State a defendant in any court applies to a cross-complaint setting up affirmative relief against the State. *State* v. *Arkansas Brick & Manufacturing Company,* 98 Ark. 125, 135 S. W. 843, 33 L. R. A. (N. S.) 376. In that case the court held that recoupment was in the nature of a common-law defense, and, while no affirmative judgment could be had thereon, it could be used in diminution, reduction, or even satisfaction of the plaintiff's cause of action, since the amount claimed springs out of the very contract or transaction on which the recovery is sought. In that case the State had agreed to furnish the defendant 300 convicts per day for ten years, but failed to furnish that number during the period of the contract. After the expiration of

this period the State continued to furnish convicts to the defendant without any new contract. In a suit by the State to recover for the wages of its convicts, it was held that the defendant was entitled to recoup damages for the State's failure to comply with her contract against the State's claim for services of the convicts, both during the period of the contract and thereafter.

The doctrine of recoupment was clearly and comprehensively stated by the Supreme Court of Alabama in *Grisham* v. *Bodman,* 111 Ala. 194, 20 So. 514. Mr. Justice McClean, in the opinion delivered by him, said that the gist and essence of recoupment is that the defendant does not owe the claim because, through the plaintiff's violation of the contract sued on, he has suffered damages which reduce or destroy the plaintiff's claim. The learned Justice said:

"While recoupment is at common law, in some sense, a means of enforcing a cause of action by the defendant against plaintiff, either wholly or partially, as the defendant's claim for damages may or may not be less, or greater, than plaintiff's demand, yet such cause of action is enforced, not as an independent claim or debt of the defendant, but by way merely of cutting off, reducing the plaintiff's claim; so that the effect of a plea of recoupment sustained is an adjudication that, to the extent of the sum recouped, the plaintiff had no claim or debt."

Other courts have recognized that recoupment goes to the right of the plaintiff's claim, and that, while no affirmative judgment can be had thereon, it can be used in diminution of the amount to be recovered, or to prevent a judgment in favor of the State, when the claim is equal to or in excess of the demand of the State. This is on the ground that the claim is in the nature of a payment, or a credit, to which the defendant is entitled, and that the demand of the State is, in fact, only for the balance. *Battle* v. *Thompson,* 65 N. C. 406; *Moore* v. *Tate,* 87 Tenn. 725, 10 Am. St. Rep. 712, 11 S. W. 935; *Commonwealth* v. *Owensboro N. & R. Company,* 81 Ky. 572; and *Commonwealth* v. *Todd,* 9 Bush 708.

In the case last cited, the Court of Appeals of Kentucky said that the plaintiff's right to assert his claim for damages in the action against him by the Commonwealth rests upon the broad principle of justice which allows everyone who is sued to show, as a matter of law, that he does not owe the demand for which he is sued. Todd, the defendant in that case, the court said, had a right to have his claim adjudicated to the extent that he was asserting such a defense to shield him, but no further.

The result of our views is that the circuit court did not err in refusing to instruct a verdict in favor of the State for the amount due for the hire of the convicts for the year 1926, and for the year 1927 up to the time they were taken away from the defendant.

It is next insisted by counsel for the State that the court erred in instructing the jury as to the measure of damages which the defendant might prove to have been suffered for the alleged breach of the contract on the part of the State, and in this contention we think counsel are correct. The court, under the authority of *State* v. *Arkansas Brick & Manufacturing Company, supra,* properly allowed the defendant to recoup the amount expended by it in the building of the stockade and the fair rental of the land which lay idle because the convicts were taken away from the defendant in February, 1927. Considering the uncertainties attending farming, it is difficult to define a safe guide for instructing juries as to the amount of damages suffered in cases of this sort; but we are of the opinion that fair rent for the land which lay out because the defendant was unable to work the same for the year 1927 was a reasonable standard. As we have already seen, the board allowed the defendant to keep the convicts in January, 1927, and thereby entered into an implied contract with it to use the convicts in making and gathering the crops on the lands in 1927 under the same terms as for the year 1926, or at least recognized the continuance of the original contract. Thus the defendant was kept from renting out the land for the year

or from obtaining a new source of labor sufficient to work the land.

This principle was recognized in *State* v. *Arkansas Brick & Manufacturing Co., supra*, where the board allowed the convicts to remain after the period of time expressed in the original contract had expired, and there was sufficient connection between the two claims made by the State to recover for the hire—one under the contract, the other for labor furnished after the date of its expiration—to make both subject to the defendant's plea of recoupment. The court erred, however, in allowing the defendant to recoup the loss it claimed to have suffered by reason of being prevented from gathering the crop of 1926 which still remained in the field. The board first made a contract with the defendant to hire the convicts for the year 1926 at the price of $1.50 per day. It would be reasonably supposed, at least in the event that the State did not deem it necessary to retake the convicts during the year, that the defendant would have its crop gathered by the first of the year 1927. It did not do so, and the State allowed the defendant to continue in the use of the convicts for a part of the year 1927, which would only be a continuation of the original contract for that year, and it could not be reasonably intended that the defendant would be entitled to recoup from the State any damages which he might have suffered from a failure to gather his crop in the fall of 1926. Such damages would not be within the reasonable contemplation of the parties at the time the contract was made, and would be speculative. Therefore the court erred in instructing the jury as to the measure of damages which the defendant might recoup, and for that error the judgment will be reversed, and the cause remanded for a new trial.

Mr. Justice MEHAFFY concurs in the judgment and the opinion, but goes further, and expresses the view that the Willey case should be overruled. Mr. Justice WOOD, Mr. Justice HUMPHREYS and Mr. Justice McHANEY con-

cur in the judgment of reversal, but dissent from the opinion.

McHaney, J., (dissenting). I concur in the judgment of reversal, but dissent on the ground that the court erred in refusing to give a peremptory instruction for appellant. I am of the opinion that this case is controlled by the Willey Brothers case, attempted to be distinguished from this case in the majority opinion. I am furthermore of the opinion that the undisputed proof shows that appellees first breached the contract by refusing to pay the amount due the State at the time agreed on, and on demand of both the old and the new board, and that appellant had the right at that time to withdraw the convicts and sue for amount due, and that appellees were not entitled to recoup anything on account of such breach.

The distinction attempted between this case and that of Willey Brothers is one without a difference. If the Willey Brothers case is wrong, it should be overruled, but the majority agree that it is right. I am authorized to state that Mr. Justice Wood and Mr. Justice Humphreys agree with this dissent.