THE STATE, Appellant, v. GLENN C. WEATHERBY.—129 S. W. (2d) 887.

Division One, June 14, 1939.

*Roy McKittrick,* Attorney General, *Drake Watson* and *James L. HornBostel,* Assistant Attorneys General, for the State.

*Glenn C. Weatherby pro se.*

852

PER CURIAM:—This proceeding is one of several developing out of what is commonly known as the insurance rate litigation. [See, among the later cases, Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S. W. (2d) 1164; State ex rel. v. Dinwiddie, 343 Mo. 592, 122 S. W. (2d) 912.] Glenn C. Weatherby, defendant, as one of the Assistant Attorneys General of the State of Missouri, had rendered legal services therein. He resigned as Assistant Attorney General on November 30, 1930. The Superintendent of the Insurance Department, with the approval of the Governor of the State, appointed him "Counsel for the Department for the purpose of enforcing the insurance laws of the State." He entered upon his duties on December 1, 1930, and his work was concluded in 1935.

On December 1, 1930, said Superintendent of Insurance and the Attorney General of the State of Missouri, as first parties, and defendant, as second party, entered into a written contract. It recited that the first parties, in their respective official capacities, had designated the second party as "special counsel" to represent them in certain suits involving the insurance laws of the State pending in the Federal and State courts, wherein said first parties were defendants, "and also in any and all proceedings now or hereafter brought" seeking the recovery of excess premiums collected by stock fire insurance companies pending the determination of the validity of a "ten per cent reduction order" of the Superintendent of Insurance, effective November 15, 1922; that said first parties desired to "bind themselves . . ., so far as they may legally do so, on the point of compensation of the second party" for services to be rendered as aforesaid; and the parties agreed:

"1. That the second party hereto shall be paid from time to time out of appropriations made by the General Assembly of the State of Missouri, and available for such purpose, such sums on account of services rendered and to be rendered, and with which to defray expense in connection with said suits above mentioned, as may be agreed upon by the parties."

The remaining portions of the contract are immaterial to the instant controversy.

Mr. Weatherby also furnished opinions to the heads of certain departments of the State government, other than the Insurance Department, at the request of the Attorney General during 1931 and 1932.

For services rendered the State during 1931 and 1932, Mr. Weatherby received between $1900 and $2000 from appropriations for the Insurance Department. He received out of appropriations for the Legal Department for services mentioned in the "contract" and expenses approximately $4200 in 1931 and $5900 in 1932; and for the "opinions" aforesaid $3000.

The State's petition sought the recovery of the amounts paid out of appropriations for the Legal Department upon the theory they were properly chargeable against appropriations for the Insurance Department and the payments out of appropriations for the Legal Department were unauthorized and unlawful. No issue was tendered involving the value of the services rendered or the correctness of the amounts. Count one of the petition covered payments for the year 1931; count two, the payments for 1932, and count three, the $3000 item for opinions and an item of $200 for expenses incurred in connection with matters mentioned in the "contract."

The court *nisi* ruled recovery might not be had of any items other than the $3000 item for "opinions." Cross-appeals resulted.

█ 1. Defendant says the Attorney General had the common law authority and, under Laws 1931, page 18, section 7, quoted infra, implied statutory authority to employ counsel to assist in the litigation arising out of the insurance laws of the State. This may be conceded without so ruling. However, the issue remains under the facts of the instant case advancements to defendant out of the appropriation for the Legal Department were lawful, which we think may be determined from a consideration of our statutory provisions without discussing Missouri constitutional provisions. [Consult, among others, Mo. Const., Art. 4, Sec. 48; Art. 10, Sec. 19.]

Defendant explained the occasion for the contract between himself and the Superintendent of Insurance and the Attorney General. He testified the Superintendent of Insurance was making advancements to three lawyers out of appropriations for the Insurance Department; that the appropriations were inadequate to meet further charges, and the agreement with the Attorney General to advance moneys to defendant on the rate cases resulted. The record also discloses that subsequent to 1932 defendant's services were paid for wholly out of appropriations for the Insurance Department. It is unescapable that he was acting as counsel for the Insurance Department under his appointment by the Superintendent, approved by the Governor, under now Section 5678, Revised Statutes 1929 (Mo. Stat. Ann., p. 4344), which reads: ". . . The Attorney General shall be his (the Superintendent of the Insurance Department's) legal adviser,

but the Superintendent may, with the approval of the Governor, employ other counsel for the purpose of enforcing the insurance laws, except in criminal prosecutions. . . ." As such counsel defendant's services were available to the State for the purposes mentioned in said contract.

Section 5679, Revised Statutes 1929 (Mo. Stat. Ann., p. 4344), contemplates the payment of "all the expenses of the Insurance Department," except certain specified expenses including "proceedings against any company . . ., which expenses are to be paid by the company, or as provided by this law, shall be paid monthly out of the amount appropriated by law from the fees collected by the Insurance Department . . .; and all the fees received by the Superintendent . . . shall . . . be paid into the State Treasury . . ., and shall be placed to the credit of the Insurance Department fund. The State shall not be responsible in any manner for the payment of any such expenses, or of any expenses of this department, or any charges connected therewith." Thus is expressed a specific legislative intent not to charge the general revenues of this State with "any expenses of" the Insurance Department.

No point is made with respect to the contract bearing date of December 1, 1930.

The appropriations for the Insurance Department for the biennial period of 1931-1932 were made "chargeable to the Insurance Department fund" including "the salaries of . . . counsel . . . and attorneys . . ." and "general expenses" consisting of specified items "and other general expense . . ." "[Laws 1931, p. 124, sec. 15.]

On the other hand appropriations for the Legal Department were chargeable "to the state revenue fund," including $50,000 "for the payment of such counsel . . . as the Attorney General may deem necessary in the defense or prosecution, as the case may be, of proceedings now pending or which may hereafter be brought in any state court or federal court wherein the State of Missouri is a party in interest . . ." [Laws 1931, p. 18, sec. 7.]

These appropriation acts evidence a clear legislative intent that the salaries, fees and expenses arising out of appointments issuing from the Insurance Department were to be chargeable against the Insurance Department fund in so far as therein provided; whereas those arising out of appointments under the Legal Department were to be paid out of the State revenues. While the General Assembly was vested with authority to change the fund chargeable with the payment of the controverted items, it did not see fit so to do. It follows that payments to one holding an appointive position under Section 5678, supra, as "counsel" out of State revenue appropriated for the support of the Legal Department were without legislative sanction and unlawful. This is in conformity with the constitutional mandate found in Section 19 of Article 10.

The Court en Banc in Aetna Ins. Co. v. O'Malley, 343 Mo. 1232, 124 S. W. (2d) 1164, 1168[13] stated ". . . Section 5678, supra, does give the Superintendent of Insurance, with the approval of the Governor, authority to employ attorneys to enforce insurance laws of this State, yet the only way such attorneys can be paid is.like any other expense of the Insurance Department, that is, by an appropriation of the Legislature."

██ II. With respect to the $3000 item for legal "opinions." It is the statutory duty of the Attorney General to "give his opinion, in writing without fee," to heads of the departments of our State government. [R. S. 1929, sec. 11274, Mo. Stat. Ann., p. 586.] The salary of the Attorney General is payable monthly out of the State treasury (Ibid., Sec. 11272, Ibid., p. 585), and in 1931-1932 the salaries of the four Assistant Attorneys General were payable in the same manner and at the same time (Ibid., sec. 11277, Ibid., p. 587). The appropriation of State funds for the Legal Department for the years 1931-1932 were "earmarked" (Laws 1931, p. 18, sec. 7); and contained no provision covering the services aforesaid other than the provision for the payment of the salaries of the Attorney General and his four statutory assistants. Defendant was neither. The Attorney General, as head of the Legal Department, had no available funds out of which to make payment for said services, if defendant was otherwise entitled to payment. An attorney may voluntarily serve the State without expense to it and an Attorney General may avail himself of such services. [Commonwealth v. Roberta Coal Co., 186 Ky. 394, 405, 216 S. W. 584, 588(3).] But, we quote: "Unless authorized by statute, an Attorney General has no authority to appoint special counsel to act generally for him in actions or proceedings in which the State is interested, so as to charge the State with the value of their services." [7 C. J. S., p. 1214, sec. 3, nn. 14-19. Consult 7 C. J. S., p. 1218, n. 63; p. 1221, n, 6; 6 C. J., p. 806, nn. 21-25; p. 808, n. 46.] The precise rulings of some of the cases cited to the text may not but others do support the broad statement of the quotation. [Bradford v. State, 7 Neb. 109, 112; Attorney General v. Continental Life Ins. Co., 88 N. Y. 571, 575. · Consult Aetna Ins. Co. v. O'Malley, quoted supra.]

██ III. a. Defendant says this money, it having been paid and the value of the services and the amounts involved standing unquestioned of record, may not be recovered.

The sovereign is plaintiff. The situation differs vastly from a controversy between private citizens involving the principle that one may do what he will with his own. Public officials are but the servants of the public. Public funds are but trust funds. Public officials performing a duty with respect thereto are not dealing with their own.

All persons, State officials and employees included, are charged with knowledge of the laws enacted by the sovereign for the protection of its property and are required to take due notice thereof. A broad distinction exists between the acts of a public official and those of an agent of a citizen within the apparent scope of his authority. Public officials act in regard to public funds in a trust capacity. Their acts beyond the scope of their authority are, and are known to be, unauthorized, do not bind their principal, and their mistakes are their own and not the mistakes of the sovereign. Defendant concedes that money paid under a mistake of fact may be recovered, and the observation in State ex rel. v. Scott, 270 Mo. 146, 153(II), 192 S. W. 90, 92(1), that public funds paid an officer under a mistake of law also may be recovered. [See, also, Lamar Township v. Lamar, 261 Mo. 171, 183(III), 169 S. W. 12, 14(5), Ann. Cas. 1916D, 740, 742 (III); State ex rel. v. Hackmann, 305 Mo. 342, 355, 265 S. W. 533, 536(9, 10); State ex rel. v. Haid, 328 Mo. 739, 747, 41 S. W. (2d) 806, 808.] But he counters with the statement he was not a State official. The reasons underlying the rule permitting recovery of public moneys wrongfully disbursed to public officials applies with equal force to all citizens, and, with the added factors that public funds are trust funds and public officials are public servants acting in a restricted trust capacity, known to all, with respect to public funds, repels the reasons under which a recovery of payments made under a mistake of law is denied private individuals. We rule this broadly put contention against defendant. [Consult cases, supra, and paragraph b, infra; United States v. Hart, 12 Fed. Supp. 596, 597(3); Annotations, 13 Ann. Cas. 351; Ann. Cas. 1913B, 651; 63 A. L. R. 1353, b, 1356-(b).] Lamar Township v. Lamar, supra, reviews the authorities and the reasons and points out the precise ruling of some of the earlier Missouri cases.

██ b. Defendant stresses the point that the State Auditor examined, audited and approved each of the items sued for; that in so doing he acted in a quasi-judicial capacity, and that the present action constitutes a collateral attack on his official ruling and cannot be maintained.

We think this contention sufficiently answered by our ruling that the instant payments were had upon warrants unauthorizedly drawn against an appropriation not chargeable therewith, and no action by any public official could make them anything else or infuse validity into them.

Defendant quotes statements from State v. Thompson (Banc), 337 Mo. 328, 337, 85 S. W. (2d) 594, 599(6); State ex rel. v. Seibert (Banc), 130 Mo. 202, 222, 32 S. W. 670, 676, and State ex rel. v. Thompson, 316 Mo. 1169, 1185, 293 S. W. 391, 398, to the effect the Auditor exercises a quasi-judicial function under the statutes mentioned infra. The last two cases were mandamus proceedings, pro-

ceedings in which the general jurisdiction of a court is restricted so that it may not review and control the State Auditor's action, or quasi-judicial discretion, unless it clearly appears that his action was arbitrary and without legal reason, or in abuse of the discretion vested in him. State v. Thompson, supra, may not be this case; but it was an action against Thompson, former State Auditor, and his surety, briefly stated, to recover payments made upon certain warrants under the theory they were issued against an appropriation not chargeable therewith. The court found there was substantial evidence of record sustaining the factual finding in the trial court that the items were properly chargeable against the appropriation upon which the warrants had been drawn, excepting items aggregating $4,093.31; and, stating this court upon review would not pass upon the preponderance of the evidence, affirmed the trial court's holding with respect to the items properly chargeable against said appropriation (337 Mo. l. c. 334, 336, 85 S. W. (2d) l. c. 597, 599), but directed judgment against defendants for the $4,093.31 patently charged erroneously (l. c. 340(7), and 601(11), respectively).

■ Disregarding our constitutional provisions (Mo. Const., Arts. III, V, Sec. 1, 15 Mo. Stat. Ann., pp. 405, 523), our statutes make the State Auditor the fiscal agent of the State (R. S. 1929, sec. 11399, Mo. Stat. Ann., p. 7796) for the safeguarding of the public funds in enumerated instances (Ibid., sec. 11404, Ibid., p. 7797), and authorize him to examine the parties, witnesses and others with respect to matters material to the settlement of any account (Ibid., sec. 11418, Ibid., p. 7804). The decisions ascribing to him a quasi-judicial function proceed upon the theory he does not necessarily act in a purely ministerial capacity in the sense that he makes no investigation and exercises no discretion. His lawfully authorized acts might be binding upon the State in certain respects but, if so, this does not go upon the principle that his rulings rise to the dignity of a judgment and stand *res judicata* of controverted matters. He does not try the merits of a claim as a court. He acts as a fiscal agent, not a judicial body. Our State Auditor does not sit as a court in judgment upon controversies between his principal and those having financial dealings with it. His authorization of unlawful disbursements of public funds is not binding upon the State. [Consult State v. Bank of Missouri (Banc), 45 Mo. 528, 541, 542; Annotation, 103 A. L. R. 1050; and see, more to the point, Farr v. People, 58 Colo. 483(3), 146 Pac. 238; State v. Young, 134 Iowa, 505, 513(2), 110 N. W. 292, 295, 296, 13 Ann. Cas. 345, 348; Commonwealth v. Bacon, 33 Ky. Law. Rep. 935, 111 S. W. 387, 390; Ellis v. Board of State Auditors, 107 Mich. 528, 536, 65 N. W. 577, 579; People v. Journal Co., 213 N. Y. 1, 7, 106 N. E. 759, 761(6); Worth v. Stewart, 122 N. C. 258, 29 S. E. 579; State v. Brown, 10 Ore. 215, 219; Emery v. United States, 13 Fed. (2d) 658(2).] State v. Thompson, 337 Mo. l. c. 336(3), 85 S. W.

(2d) l. c. 599(5), held a "legislative settlement" of the accounts between the State Auditor and the State was not a bar to that action. An audit, adjustment and settlement by the county court is not *res judicata* of a controversy between the county and a citizen. [Sears v. Stone County, 105 Mo. 236, 16 S. W. 878, 24 Am. St. Rep. 378; reviewing the early cases; Jackson. County v. Fayman, 329 Mo. 423, 431; 44 S. W. (2d) 839, 851(1), reviewing the authorities; State ex rel. v. Diemler, 255 Mo. 336, 351(2), 164 S. W. 521(5), et seq.]

c. What we have said disposes of defendant's point that he need not take notice of any limitation on the powers of the State Auditor in auditing the accounts. He had actual knowledge of the facts involved and he received payment under statutory provisions which every person was bound to know and construe at his peril.

■ d. Defendant mentions that principle of law under which courts refuse their aid to a plaintiff in a controversy founded upon an illegal agreement. This rule is not for the sake of a defendant but rests upon public policy; and as between individuals *in pari delicto* the position of defendant is the better simply because the courts will not intervene. We are at some loss to perceive the applicability of the rule. The sovereign, through the General Assembly, has declared the public policy of the State applicable to the instant case. An enforcement, rather than the sanction of a violation, of the law best serves the public interest. The rule is not applicable when the State is an interested party. [Consult 13 C. J., p. 497, sec. 440, n. 26; 12 Am. Jur., p. 731, sec. 215; 6 R. C. L., p. 832, sec. 222, n. 16; McCarter v. Firemen's Ins. Co., 74 N. J. Eq. 372, 387(2), 73 Atl. 80, 86(2), 29 L. R. A. (N. S.) 1194, 1203(2), 135 Am. St. Rep. 708, 721-(2), 18 Ann. Cas. 1048, 1053(2); Witmer v. Nichols, 320 Mo. 665, 671, 8 S. W. (2d) 63, 65(3).]

Defendant quotes passages from Seaman v. Cap-Au-Gris Levee District, 219 Mo. 1, 35, "Third," 117 S. W. 1084, 1094, "Third;" and Sparks v. Jasper County (Banc), 213 Mo. 218, 237 (IV), 112 S. W. 265, 269(4), to the effect that municipal corporations may not recover the consideration paid under a contract fully executed where it retains the benefits and cannot restore the property acquired under the contract, even though the contract be illegal and, if not fully performed, could not be enforced. The holding of the Seaman case (l. c. 36 and 1094, respectively) does not aid defendant. Some observations in the Sparks case tend to support defendant's position; but note the quotation from Simpson v. Stoddard County, 173 Mo. 425, 466, 73 S. W. 700, 710, in the Sparks case (l. c. 243 and 272, respectively) and the statement (l. c. 241 and 271, respectively that Jasper County had authority to build bridges (the recovery of payments therefor being sought) and that the illegality, if any, connected with the contracts arose, not out of an unlawful act but, out of a defective exercise of power bestowed. They do not rule this case. In neither was the State a party.

e. 1. The State instituted this suit. From what has been hereinbefore ruled, defendant's broad assertion that the State has laid aside its sovereignty and that his available defenses are the same as against any ordinary suitor, is obviously unjustifiable. Moore v. Tate, 87 Tenn. 725, 730, 744, 11 S. W. 935, 936, 939, the only case discussing the issue among those cited by defendant, expressly refutes this broad statement. But, more to the point:

2. With respect to services performed for the Insurance Department. In March, 1933, $43,875.94 was transferred from the "Insurance Department Fund" to the "General Revenue Fund." The State's pleadings questioned only the propriety of making the payments out of the appropriation for the Legal Department. The case was tried below on the theory that the services were bona fide rendered the State and the expenses were bona fide incurred; that the amounts involved are reasonable and should have been paid out of the appropriation for the Insurance Department; and that the State Auditor, on the vouchers of the Attorney General, unauthorizedly directed their payment out of the general revenue appropriated for the Legal Department. The technical issue involves a defendant's common law right of recoupment; a purely defensive matter growing out of the transaction constituting a plaintiff's cause of action, available only to reduce or satisfy a plaintiff's claim, and permitting of no affirmative judgment for defendant. Section 11417, Revised Statutes 1929 (Mo. Stat. Ann., p. 7804), permits one sued by the State to set-off claims against the State which "have been exhibited to the State Auditor, and by him allowed or disallowed" etc. The modern set-off is of statutory origin. A recoupment is, in a sense, a restricted set-off; but technically they are not the same. For most practical purposes the distinctions have ceased to have importance. [Cf. Set-off and Counterclaim 57 C. J., pp. 358, et seq. secs. 1-3, 11, 15-17; 24 R. C. L., pp. 792-796, secs. 1-5; Fricke v. Fuetterer Battery & Supplies Co., 220 Mo. App. 623, 629, 28 S. W. 1000, 1002(6, 7).] Our statute according a defendant the right to set-off against the State claims arising out of extrinsic transactions is broad enough to embrace the common law right to assert in defense a claim arising out of the same transaction. [Consult on set-offs generally, the Fricke case, supra (7); and Grand Lodge of Masons v. Knox, 20 Mo. 433, reviewing authorities.] State ex rel. v. Hackmann, 305 Mo. 342, 354, V, 265 S. W. 532, 536(10), is authority for the right of the State to recoup an overpayment to a public official. The defense is well within the following authorities: State of Arkansas v. Arkansas Brick & Mfg. Co., 98 Ark. 125, 128, 135 S. W. 843, 844, 33 L. R. A. (N. S.) 376, 381, and annotation; Annotation 42 A. L. R. 1481, b; State ex rel. v. Lovett-Carnahan Co., 179 Ark. 43, 50, 14 S. W. (2d) 233, 135-(6, 7); Port Royal & A. Ry. Co. v. South Carolina, 60 Fed. 552, 553; Rowan v. Sharps Rifle Mfg. Co., 29 Conn. 282, 329; Commonwealth

v. Todd, 72 Ky. (9 Bush) 708, 715, 716; State v. Bucholz, 169 Minn. 226, 210 N. W. 1006; State v. Schurz, 143 Minn. 218, 220, 173 N. W. 408, 409(1); Moore v. Tate, supra; McCandlish v. Commonwealth, 76 Va. 1002, 1005. [See, also, 36 Harvard L. Rev. 871; 25 Columbia L. Rev. 970.]

The State here relies upon the holding in State v. Thompson, 337 Mo. 328, 340(7), 85 S. W. (2d) 594, 601(12), that the facts that the State had suffered no loss and that the printed matter, payment for which was in question, was necessary and was used constituted no defense; but in that case, l. c. 338 and 600, respectively, it appears that the appropriation allocated for the purpose there involved "had been entirely used." The instant record does not so disclose. On the other hand, it fails to show that out of the appropriation for the Insurance Department properly available for the payment of the services and expenses of defendant there remained a sum sufficient to discharge defendant's claim in whole or in part. If not, it is not the function of the courts to direct payment. Our Constitution entrusts that to the Legislative Department. By its appropriation, the Legislative Department clearly limited the lawful extent of the State's obligation to pay for services rendered and expenses incurred on behalf of the Insurance Department. Our statute respecting set-offs against the State and the common law principle of recoupment contemplate the assertion of legal, not unauthorized and unlawful, claims. To permit defendant to recoup payments made, absent available funds for lawful payment, would accomplish by indirection what could not be lawfully done directly, would make unlawful payments legal, infuse validity into the State Auditor's unauthorized warrants, encroach upon the legislative function of our State government and smack of judicial tyranny. A little money, trickling here and there through the State treasury, may be a small matter in itself; bue judicial sanction of payments unauthorized by the Legislative Department, no matter how meritorious the service, might become a sinister menace. In harmony with the declared constitutional and statutory policy of this State to safeguard the public treasury, courts should apply the motto *obsta principiis* and withstand beginnings of slight deviations from the prescribed lawful modes for the payment of the obligations of the State.

If defendant establishes his lawful right to receive payment, his defense of recoupment may be effectively interposed.

3. What we have just said disposes of the $3000 item for "opinions." There was no appropriation out of which lawful payment could be made.

The judgment should be affirmed with respect to the $3000 item and reversed and remanded with respect to the other items involved. It is so ordered. All concur.

## ON MOTION FOR REHEARING.

PER CURIAM:—Appellant Weatherby's motion for rehearing contends that the $3000 for "opinions" was properly allowable and paid out of the $30,000 appropriated to the Legal Department "For Operation: For general expense including communication, printing and binding, transportation . . ., travel . . . and for stationery and supplies" (Laws 1931, p. 18, sec. 7); and asserts that our ruling with respect to said item conflicts with a controlling ruling in Thatcher v. City of St. Louis, 343 Mo. 597, 122 S. W. (2d) 915, 917 (inadvertently overlooked by counsel upon original submission), reading: "Although he cannot obligate the State beyond appropriations made for such purposes, our Attorney General does have authority to employ special assistants. . . . Before this section (11277, R. S. 1929) was amended to authorize the appointment of such 'other Assistants as may be necessary' (Laws 1933, p. 177) the Legislature recognized the need of more than the regular Assistant Attorneys General, and made appropriations for Special Assistants beyond the number specifically authorized by statute. [See Laws 1931, p. 10; Laws 1929, p. 48.]"

The Thatcher case involved the propriety of allowing and paying fees to attorneys representing the Attorney General out of the funds of a charitable trust, the subject matter of the litigation. Aside from the fact that a reading of the Thatcher case does not disclose that Laws 1931, page 18, section 7, was involved, we think it clear that the quoted observations had no reference to the $30,000 appropriated "for operation" under said Section 7 but referred to the $50,000 item under appropriations "For Personal Services" for such counsel as the Attorney General deemed necessary in the defense or prosecution of proceedings wherein the State of Missouri was a party in interest. The factual, as well as the legal, issues sufficiently differentiate the cases.

Appellant Weatherby rendered personal services in furnishing "opinions." By distinctly specifying the sums appropriated for enumerated personal services rendered the Legal Department, the General Assembly evidenced an intent within Section 19, Article 10, of our Constitution in the enactment of said Section 7 not to pay for "personal service" out of moneys appropriated for "operation" of the Legal Department.

The motion is overruled.