EQUILEASE CORPORATION *v.*
UNITED STATES FIDELITY AND
GUARANTY CO. et al

77-100                                    565 S.W. 2d 125

Opinion delivered January 23, 1978
and amended May 15, 1978
(In Banc)
[Rehearing denied May 15, 1978.]

*Wright, Lindsey & Jennings,* for appellant.

*Friday, Eldredge & Clark,* by: *Overton S. Anderson,* for appellee, United States Fidelity & Guaranty Co.

*Bill Clinton,* Atty. Gen., by: *Kirby Smith III,* Asst. Atty. Gen., for appellees Auditor of State Jimmie (Red) Jones et al.

*Charles A. Brown,* for Amicus Curiae, John F. Wells and Independent Voters of Arkansas, Inc.

KENNETH R. SMITH, Special Justice. August 2, 1973, the purchasing department of the State of Arkansas issued a re-

quest for bids for supplying mobile training units with related services to the Graphic Arts Training Program of the Department of Correction. Educational Programs and Equipment Corporation (EPEC) was the low bidder and was awarded the contract. On August 27, 1973, EPEC, as principal, and United States Fidelity and Guaranty Company (USF&G) as surety, executed in favor of the State of Arkansas a $50,000.00 statutory performance and payment bond under the terms of which the surety agreed that in case of default of the principal, the surety would, to the extent of the bond, make good any such default.

On September 4, 1973, EPEC and the State of Arkansas entered into a lease purchase agreement. Under this agreement EPEC was to reimburse the State for the first year's salaries of the personnel running the program. On September 14, 1973, EPEC assigned all the proceeds due it under the lease purchase agreement, to the Appellant, Equilease Corporation, but retained all the obligations and duties. EPEC then defaulted on reimbursing the State of Arkansas for a portion of the first year's salaries of the personnel running the program which amount was determined to be $32,500.00. Under the original lease between EPEC and the State of Arkansas, the State of Arkansas agreed that it would not withhold or divert from an assignee of said lease any payments due thereunder or set up any defenses against such assignee but would retain all its defenses against the original lessor, EPEC.

The State of Arkansas made demand upon USF&G as surety for the performance of its principal, EPEC, for its default under said lease purchase agreement. USF&G then brought suit against the State of Arkansas and Equilease Corporation, asking that the State of Arkansas be enjoined from making further payments under the lease purchase agreement to Appellant, Equilease, until USF&G's obligations under the bond and its rights of subrogation to the undisbursed lease payments had been determined.

A temporary injunction was entered enjoining the State of Arkansas from making further payments to Appellant until this issue had been settled which injunction was lifted after

Appellant filed a bond guaranteeing payment to USF&G up to the amount of $50,000.00, in the event it was finally adjudged that USF&G had the right to be reimbursed from the lease payments for any loss it sustained under said suretyship agreement.

The trial court granted judgment to the State of Arkansas against USF&G in the sum of $32,500.00, and held that upon USF&G's payment of said amount to the State of Arkansas it would be entitled to recover the entire amount from lease payments made to Appellant since Appellant had received these payments from the State under bond during the pendency of this action.

Since USF&G did not appeal from the judgment against it the only question properly before this Court is whether USF&G is entitled to recover its loss upon its suretyship agreement from the balance of the lease payments owed by the State of Arkansas.

Appellant contends that it may not and further contends that this would be a diversion by the State in violation of the original lease.

Under the doctrine of equitable subrogation a surety taking over and completing the contract of the defaulting contractor is subrogated to the rights of the contractor with respect to funds due the contractor. See Vol. 16 *Couch on Insurance* (2d Ed.) § 61-396; Also 17 Am. Jur. 2d, Contractor's Bonds, § 107. Such rights are superior to those of a mere assignee of the money. 83 Corpus Juris Secundum Subrogation § 59. These rights become vested at the time the surety provides full satisfaction for default and relate back to the time the bond or contract of suretyship was entered into. Vol. 11, Appleman, *Insurance Law and Practice,* § 6630. Therefore, USF&G's rights to the undisbursed lease payments would relate back to a time prior to Appellant's assignment and to Appellant's rights thereunder.

The terms of the original lease under which the State of Arkansas agreed that it would not withhold or divert any lease payments from or assert any defenses against an

assignee do not preclude the State from its rights under the Statutory performance bond issued by USF&G. Neither do they preclude USF&G from asserting its rights to the balance of the lease payments. There was a clear duty and obligation upon USF&G to remedy the default of its principal and upon doing so the doctrine of Equitable Subrogation clearly applies.

Appellant also argues that the state agreed to indemnify and hold it harmless from all losses and claims, regardless of how they arose, by the following clause in the contract:

> Lessee agrees to indemnify, save and hold Lessor harmless from all losses, damages, claims, penalties and expenses, including attorney's fees, howsoever arising or incurred because of or incident to any item . . . .

Appellant asserted this right in a cross-complaint against State Auditor Jimmy "Red" Jones, State Treasurer Nancy Hall, Commissioner of the Department of Correction Hutto, Industry Administrator Dermitt of the Department of Correction and Fiscal Administrator Thomas of the Department of Correction. It asked judgment over against these defendants for indemnity. These defendants asserted that this counterclaim against them was, in essence, a suit against the state prohibited by Art. 5 § 20 of the Constitution of Arkansas. It is clear that this cross-complaint might have appropriately been considered as asserting a setoff against any recovery by the state. *Arkansas Department of Correction v. Doyle*, 254 Ark. 102, 491 S.W. 2d 602. Here the state sought no recovery from appellant and none was allowed. Consequently, the claim for indemnity, although asserted against state officials, was in reality a claim for a money judgment against the state. As such, it constituted a suit against the state which was barred by Art. 5 § 20 of the state constitution. *State v. Lovett-Carnahan Co.*, 179 Ark. 43, 14 S.W. 2d 233; *McCain v. Crossett Lumber Co.*, 206 Ark. 51, 174 S.W. 2d 114; *Wilson v. Pinkert*, 210 Ark. 1093, 198 S.W. 2d 723; *Ross v. Rich*, 210 Ark. 74, 194 S.W. 2d 297; *Page v. McKinley*, 196 Ark. 331, 118 S.W. 2d 235; *Watson v. Dodge*, 187 Ark. 1055, 63 S.W. 2d 993.

The Amicus Curiae in its brief brings forth many new issues, all of which perhaps could have been properly made the basis of a taxpayers intervention at the trial court level; none of which are properly before this Court. The Amicus Curiae must take the case as he finds it and cannot introduce new issues at the Appellate level. *Giles* v. *State*, 261 Ark. 413, 549 S.W. 2d 479.

Affirmed.

BYRD and HICKMAN, JJ., disqualified.

Special Justice CHARLES LEDBETTER joins in the opinion.